| 25 | 411 |
| 132 | 423 |
| 25 | 411 |
| 34a | 223 |
| 25 | 411 |
| 45a | 447 |
| 25 | 411 |
| 158 | 17 |
| 25 | 411 |
| 65a | 481 |
| 25 | 411 |
| 69a | 565 |
| 25 | 411 |
| 94a | [3]525 |
| 94a | [2]527 |
| 25 | 411 |
| 203 | [1]413 |
| 25 | 411 |
| 211 | [2]315 |

HENRY BRADFORD, Plaintiff in Error, *v.* THE CITY OF CHICAGO, Defendant in Error.

### ERROR TO COOK.

An assessment paid to the City of Chicago for the purpose of opening a street, may be recovered from the city, if the street shall not be opened within a reasonable time; and any period of time, which would bar the recovery, if the action should be delayed, will be considered reasonable.

The payment of an assessment is not voluntary, if the collector has a warrant by virtue of which he may levy and sell; and the party who has paid the money may recover, although the assessment was illegal; the city having the money for its general uses.

Money paid under a misapprehension of facts may be recovered; so also, if there has been a total failure of the consideration for which the money was paid.

THIS was an action commenced before a justice of the peace, in May, 1860, and taken by appeal to the Circuit Court of Cook county.

There was a judgment for defendant for costs. The plaintiff appealed to the Circuit Court.

Summons from Circuit Court, May 26th, 1860.

The cause was submitted to the court for trial, a jury being waived by agreement. MANIERRE, Judge, presided.

The Circuit Court found the issues for the defendant. A motion for a new trial was overruled. Judgment was rendered for costs, in favor of the defendant.

The original assessment roll for the opening and extending of South La Salle street, from Madison street to Jackson street, in the City of Chicago, was introduced in evidence, by the plaintiff, it being admitted that the roll produced was the original, of which the portions material to the determination of this case, copied into the record, are as follows:

Order of common council, October 15th, 1855, for the notice of intention to appropriate the land necessary to open the street, and for the survey.

November 2nd, 1855, order for the election of "three reputable, discreet, and disinterested freeholders of the city of Chicago," for the purpose of ascertaining the damages, etc.

F. A. Bragg and Thos. Church elected. No choice as to the third.

January 10th, 1856, order for the election of commissioners for the opening of Franklin street, passed, and after one ballot, "on motion of Alderman Fletcher, further balloting on said order was suspended for the purpose of electing three commissioners to make the assessment for the extension of La Salle street. On the first ballot there was no choice. On the second ballot W. W. Saltonstall received ten votes, and was declared elected. On the third ballot F. A. Bragg and Thomas Church received each eleven votes, and were declared elected."

Notice of intention to appropriate, dated October 19, 1855, and certificate of publication.

Oath of commissioners, January 16, 1856. Commissioners' notice.

A page of the assessment containing the property of plaintiff. No dollar or other mark, word or character, to indicate what the figures under the head of "valuation," "value of land condemn'd," "total damages," "benefits by the improvement," "cost of proceedings," "total benefits," "net damages," "net benefits," on this page, or elsewhere in the assessment roll, meant or were intended to mean, except at the end of the roll, where the "totals" appear, to wit: "Cost of proceedings, $4,737.53;" "Net damages, $135,328.00;" "Net benefits, $140,065.53."

Commissioners' return, April 5th, 1856.

Commissioners' notice, January 24th, 1856, and certificate of publication.

Notice by city clerk, dated April 7th, 1856, of return of assessment, and that it would be confirmed unless objected to, and that common council would hear and determine all objections to said assessment on April 21st, 1856, etc.

Certificate of publication of said notice attached thereto, but with neither date nor signature.

Order of confirmation by common council, June 9th, 1856, and that warrant issue.

*Samuel D. Ward* being sworn, testified: I am the city comptroller.   George W. Colby was special collector in 1856 and 1857, under the then law.   He is dead now.   I remember that a demand was made on me by the plaintiff's attorney last spring, for the repayment of this money to the plaintiff, and I refused to pay it over.

South LaSalle street has not been extended from Madison to Jackson.   It is just as it was.   I think there has been no order for a new assessment for that purpose.

The city has collected money on the assessment roll in evidence, and paid out all that it has collected.   It has collected some thirteen thousand dollars, and paid it out on a mandamus from the Supreme Court; the mandamus was for the city to collect and pay over the money on the assessment, and was issued in the case of Van H. Higgins, reported in volume 18 Illinois Reports.

*Walter Kimball* testified: I am clerk of the Superior Court. I have the proceedings in that court on application for judgment on warrant 207 south, for extending LaSalle street from Madison to Jackson street.   There was no application for judgment against the property mentioned in the receipt in this cause.   I have also here a package of the objections filed on behalf of various property owners, who objected to judgment.   Judgment was refused, as this record shows, as to a large number of these lots—all the lots whose owners filed objections.   The record and objections referred to by the witness were then offered in evidence and received subject to objection.   The record showed the application of the city collector for judgment on the warrant referred to, was made to the judges of the Superior Court of Chicago, at the January special term, 1860, of said court, the report of the collector and the affidavit annexed thereto bearing date January 26th, 1860.

February 6th, 1860, the Superior Court sustained the objections of all the owners of lots who resisted the application, and the city attorney thereupon withdrew the application against all the other lots in the warrant.

Among the objections made were these:

1.   That more than two years have elapsed since the confirmation of the assessment roll in question, by the common council of the city of Chicago.

2.   Because there is no character, word or mark at the head of the valuation or amount of taxes, to indicate whether the numerals were intended for dollars, cents, mills, and the court has no basis by which to determine the amount for which judgment should be entered against said lots.

The plaintiff then read in evidence, a receipt in words and figures following:

"State of Illinois,
    City of Chicago. }     CITY COLLECTOR'S OFFICE, S. D., CHICAGO.

    Jan'y 26, 1859. Received of H. Bradford, Eighty-two Dollars, Eighty cents, being the amount assessed by said city, on the 17th day of June, 1856, for opening LaSalle Street, from Madison St. to Jackson, on the following described property, situated in said city, viz.:

| Part of city. School Section. | Sub Lot 2. | Lot 7 & 8. | Block 95. | Valuation 2400. | Amount. 82.80. |
|---|---|---|---|---|---|

GEORGE W. COLBY,
*Special Collector, South Division, of the City of Chicago.*
Per JOHN FERRIN.

*Samuel D. Ward* recalled: I have the warrant number two hundred and seven south, the warrant issued on the assessment for opening and extending South LaSalle street. It is dated June 17th, 1856. It was placed in the hands of the special collector and collections made, and afterwards in the hands of the new city collector, and collections made as before. The $82.80 assessed against the property of the plaintiff, is marked "paid."

This assessment has been in litigation, and is now under injunction against the city. The city has paid out all it has received on it. The money has been paid to persons whose property was condemned for the opening of the street. There is a suit now pending against the Rock Island Railroad Company on this assessment.

I don't know how the assessment is in litigation, except as stated.

The warrant was then put in evidence, and so much as is material to the determination, is as follows:

Warrant recites confirmation of assessment, June 9th, 1856, and one page thereof appears in the bill of exceptions. No dollar or other mark, word or character to indicate what the numerals under the heads of "Valuation," etc., meant, or were intended to mean. Opposite the assessment, against the plaintiff's lot, is marked "Paid." Close of the warrant as follows:

"Now, therefore, you are hereby commanded to levy, make and collect of the goods and chattels of the respective owners of the real estate, above described, the several sums of money assessed thereon, for which each may be liable as aforesaid, and hereof make due return in what manner you shall execute this writ, within thirty days from the date hereof.

Witness, Thomas Dyer, Mayor of the city of Chicago, and the corporate seal thereof, the seventh day of June, 1856.

    [SEAL.]                    THOS. DYER, *Mayor.*"
"Attest: H. W. ZIMMERMAN, *City Clerk.*"

Return of city collector, July 21st, 1856, stating *inter alia,* "that he has not been able to find any personal property belonging to any of them, subject to the payment thereof. He therefore returns the said warrant unsatisfied, as to all assessments not marked "paid" on the face of said warrant.

[Signed]          GEO. W. COLBY,
*City Collector of South Division."*

This was all the evidence in the case.

The errors assigned are:

That the court erred in finding the issues for the defendant below.

That the court erred in overruling the motion of the plaintiff below, to set aside said finding, and grant a new trial in said cause.

That the court erred in rendering judgment for the defendant below.

That the judgment aforesaid, in form aforesaid given, should have been given in favor of the plaintiff below, and not in favor of the defendant.

That the finding of the court below was against the law and the evidence.

MELVILLE W. FULLER, for Plaintiff in Error.

T. L. KING, for Defendant in Error.

BREESE, J.   From the evidence in this cause, it appears the plaintiff sued to recover back from the city the sum of eighty-two dollars and eighty cents, which he had paid under a void assessment, and which the city refused to repay him on demand made therefor.   The question of the legal liability of the city to refund is directly presented.

We are highly favored by the views *in extenso* which the Circuit Court entertained of this case, and which the city attorney has prefixed to his own very able argument.   They have aided us very much in reaching the conclusions to which we have arrived, and which we will proceed to state.

The Circuit Court found the assessment void on its face, and decided that under it no right could be asserted by or against the city.   The roll failing, as it does, to disclose the value of the figures employed in it to indicate the amount assessed for damages, it equally fails to disclose the value of the figures employed to indicate benefits.   "If, therefore," the court say, "it fails to furnish evidence for the city, it equally fails to furnish evidence against it."   The court does not seem to consider that the assessment roll with the numerals "82.80" upon it, and the

word " paid " against it, is not attempted to be used as evidence against the city of the payment of the money, but it is the collector's receipt, wherein he acknowledges to have received " eighty-two dollars and eighty cents," the amount assessed against the plaintiff's property, and the roll is used only for the purpose of showing that wanting, as it does, certain essential requisites, it was a void assessment.

That court is of opinion, if the city can now treat the assessment as invalid, that the legal position of the respective parties in interest, meaning, we suppose, the owners of the property assessed and the city, would be—1, If the city should take no further steps, and should abandon the opening or extension of the street, those who have obtained their damages from the city would be entitled to keep the money, and the city would succeed to their rights of property in the land condemned; 2, that those to whom money was intended to be awarded for the purpose of opening the street, would be unable to collect it by reason of the invalidity of the assessment; 3, that those who have been assessed to pay money for benefits to accrue from the improvement, and who have not paid, could successfully resist the collection for the like reason; and, 4, those who have paid their assessments for benefits, would be entitled to recover the same back from the city, as money collected to their use." This we think is a correct view of the condition of the parties.

It is the last category in which the plaintiff here is placed, and yet the court says, upon the evidence, he is not entitled to recover back the money. That before this right can exist, it must be shown that the improvement as well as the assessment has been abandoned, neither of which has been shown in the case. Some unequivocal act of abandonment must be shown, and lapse of reasonable time in which to proceed, without taking steps, would be construed as such an act. The court then remarks upon the difference between taxes and assessments, the first being laid for ordinary revenue purposes, and assessments exclusively for benefits. In the case of assessments, the court says: the money raised by them is held *in trust* by the public, to be devoted to the particular purpose of benefit intended. It does not become a part of the general revenue, and may not be diverted from the improvement in view, and an injunction would lie in a proper case, to prevent a misapplication of the fund. It is clear, therefore, that if the object in view should be abandoned, an action for money had and received would lie to recover back the money on the assessment. But while recognizing this right, it would be manifestly vexatious to expose the city to suits for money collected upon a void assessment of this kind, when there is no intention to abandon the improvement.

The Circuit Court thinks by regarding the city as a trustee, holding the fund for the benefit of those concerned and to be credited on the new assessments, no violence would be done to any principle or right, while the contrary rule would expose the trustee to great costs and embarassment in refunding money, perhaps already paid upon the assessment itself. The court concludes by saying: "In case, however, a new assessment should be made, and the parties be assessed with a greater or less amount than before, doubtless the difference would have to be paid so received by the city, and in such case the former (those who had paid,) would be entitled to recover such difference, by suit or otherwise, and the latter by warrant or judgment upon the assessment."

Assuming these views of the Circuit Court to be clear and satisfactory, except in omitting to state, that although the fund raised by special assessment is a specific fund, it is collected by the same officers who collect the general taxes, and is paid by them into the general treasury. If the assessments are not paid, property is sold in the same manner and by the same officers, to make the money. When in the treasury, the money is paid out as other moneys, the treasury being charged with the specific fund. But the question of abandonment is not disposed of by the court, and what shall be considered a lapse of reasonable time, as evidence of abandonment, is not defined. This warrant on the assessment was issued June 17, 1856, and returned by the collector July 21st of that year, the plaintiff having paid in the interim. The suit was commenced in May, 1860. From July, 1856, to May, 1860, near four years, no act was done by the city to carry out the improvement for which the plaintiff had paid his money, and no proof of any obstacles in the way, except those occasioned by the acts of their own officers in making up a void assessment roll. Nor could the improvement be carried out on this void assessment; it being void avoids the whole undertaking, and is equivalent to an actual abandonment.

Considering the question of abandonment, by "lapse of reasonable time," our statute of limitations must be regarded. In five years from the time the plaintiff paid his money, that statute would have presented an effectual bar to a recovery. Allowing to the city four years of the time covered by this statute, within which to set on foot proceedings to prosecute the work, we think would be quite reasonable. Failing in that time to originate a new assessment, and showing no reason for the neglect, is sufficient evidence, in this case, to show an abandonment. And herein no hardship or loss is imposed upon the city, for the property remains, whoever may be the owners, and will be liable upon such new assessment, and possibly to a greater

27

extent than has been already attached to it. It was the duty of the city, to have furnished early evidence, after the assessment roll was adjudged void, of an intention to prosecute the work. This they have not done, whilst time has been rapidly rolling on, nearly completing a bar to the plaintiff's action. It would not have been wise in him to have waited until the bar was complete.

There is, however, another ground on which the plaintiff ought to recover, and that is, the payment of the assessment was not, in legal contemplation, voluntary, made with the full knowledge of all the facts and the law at the time of payment.

It was paid to the collector whilst the warrant was in his hands to be executed. It is fair to presume, the warrant was exhibited to him by the collector. This was its mandate: "Now, therefore, you are hereby commanded to levy, make and collect, of the goods and chattels of the respective owners of the real estate, above described, the several sums of money assessed thereon, for which each may be liable as aforesaid, and hereof make due return in what manner you shall execute this writ within thirty days," etc. The plaintiff was one of these respective owners—he saw his property assessed valued at 2,400, under the head of "Valuation," and the assessment on it 82.80, under the head of "Amount," and was induced to believe that his property had been valued at twenty-four hundred dollars, and assessed at eighty-two dollars and eighty cents, and fearing, doubtless, if it was not promptly paid, the collector would obey the exigencies of the warrant, and levy upon his household furniture, or carriage and horses, and sell them at public sale, on an advertisement, in which he would be represented a defaulter, promptly paid the money, the fact being, that it had no valuation affixed, or taxes charged whatever. The money is in the city treasury, not separated from, or distinguishable from other moneys, but there it is, for the general uses of the city. On the authorities cited by the counsel for the city, we will endeavor to show, that this payment was so far compulsory, as to give to the plaintiff a right of action to recover it back.

The first case cited is *Preston* v. *The City of Boston*, 12 Pickering, 7, in which three questions were made: 1, Whether the plaintiff was rightfully taxed for his poll and personal property in the city of Boston; if not, 2, Whether his only remedy was by appeal, as for an over-taxation; 3, Supposing him not liable, whether the amount was voluntarily paid, so that he must be considered as having submitted to the demand as a claim of right on the part of the city, and is thereby precluded from reclaiming the sum paid ; or whether it must be considered as

paid under compulsion and duress, so that if he was not liable to pay it, he may now recover it back as so much money received by the defendants to his use. The court decided, that as he was not a citizen of Boston, but of Medford, he was not rightfully assessed for his poll and personal property in Boston, and that he had a remedy other than by appeal, as for an over-taxation.

Upon the remaining question, whether the money was paid voluntarily, or under duress, the court say: When a party is compelled by duress of his person or goods to pay money for which he is not liable, it is not voluntary, but compulsory, and he may rescue himself from such duress by payment of the money, and afterwards, on proof of the fact, recover it back, citing *Astley* v. *Reynolds*, 2 Strange, 916. That case was where the plaintiff had pawned plate to the defendant, and coming to redeem it, the defendant demanded ten pounds for the interest of his loan of twenty pounds. The plaintiff tendered four pounds, which was more than legal interest, which was refused, and he then went away. Some months afterwards, the plaintiff made a second tender of four pounds, which was again refused, the defendant still insisting upon ten pounds; the plaintiff paid it, had his goods and brought his action for the surplus beyond legal interest. It was argued that this payment was made voluntarily, and falls within the rule *volenti non fit injuria*, that he could have maintained trover for the plate. The court say, we think this is a payment by compulsion; the plaintiff might have such an immediate want of his goods that an action of trover would not do his business. Where the rule *volenti non fit injuria* is applied, it must be where the party had his freedom of exercising his will, which this man had not; we must take it he paid the money relying on his legal remedy to get it back again. The court in Massachusetts proceed to say: What shall constitute duress is often made a question. Threat of a distress for rent is not such duress, because the party may replevy the goods distrained, and try the question of liability at law. Threat of legal process is not such duress, for the party may plead and make proof and show that he is not liable. But the warrant to a collector, under our statute, for the assessment and collection of taxes, is in the nature of an execution running against the person and property of the party, upon which he has no day in court, no opportunity to plead and offer proof, and have a judicial decision of the question of his liability. When therefore, a party, not liable to taxation, is called on peremptorily to pay upon such a warrant, and he can save himself and property in no other way than by paying the illegal demand, he may give notice that he so pays it by duress, and not voluntarily; and by showing that he is not liable, recover it back as money had and received.

It may be said the court, in *Preston* v. *Boston,* lays stress upon the fact of the party paying having no other way to extricate his person or property, but that this plaintiff had another way, by refusing to pay and being returned as delinquent, and contesting the validity of the assessment before the court, when a judgment was prayed for on the collector's return. The answer to this is, that the collector might not, if the plaintiff had personal property, return him as delinquent, but seize and sell such property according to the exigency of the warrant, in which event the law would give the plaintiff no relief, as he could not, under our statute, replevy his goods, they being taken for an assessment. (Ch. 88, Scates' Comp. 226.) He has no day in court—no opportunity to plead or make defense against the warrant. It clothes the officer with full power to seize and sell, and is in the nature of an execution.

In a later case, *The Boston and Sandwich Glass Company* v. *City of Boston,* 4 Metcalf, 181, the court ruled in the same way, dispensing, however, with notice or protest.

The case in 27 Maine, 147, *Smith* v. *Readfield,* takes a different view, and cites, as authority, *The Amesbury Woolen and Cotton Manufacturing Company* v. *The Inhabitants of Amesbury,* 17 Mass. 462. Instead of sustaining this view, it is the opposite, for the court distinctly say: "The voluntary payment of a part of the taxes in this case does not affect the right of the plaintiffs to recover the amount of money paid by them upon an illegal assessment."

The other case from Maine, *Hemmingway* v. *Inhabitants of Machias,* 33 Maine R. 445, was a case of over-taxation simply, in which, owing to some statutory provision, it was held that his redress was not by an action of assumpsit, but by application to the assessors for an abatement, and on their refusal, to the county commissioners. The case of *Mayor of Baltimore* v. *Hoffernan,* 4 Gill, 432, announces nothing more than the old established doctrine, where a party has paid or expended money for another in ignorance of his want of legal liability to pay or make the expenditure, he cannot recover it back. But the court, in reviewing all the English and American decisions on what is or is not a compulsory payment, recognize and affirm the doctrine in the Massachusetts cases we have cited, and say: "We consider, therefore, the doctrine as established, that a payment is not to be regarded as compulsory, unless made to emancipate the person or property from an actual and existing duress imposed upon it by the party to whom the money is paid. And that a payment made under the apprehension, or even menace, of an impending distress warrant, would not render it a payment by compulsion." The court say, "that it is not pretended

the plaintiff expended the money to extricate his estate from the pressure of some process that could not be resisted."

In the case in 5 Gill, 248, *Morris* v. *The Mayor of Baltimore,* the court say : " It is apparent the tax was demanded and paid under the impression, honestly entertained by both parties, that it was legally due, and he had the means of vindicating himself against the assessment if it was illegal." In this case the facts are different. The plaintiff had no means of vindicating himself against the assessment, for the collector might have levied and sold his personal property.

The case of the *Bank of New Orleans* v. *The City of New Orleans,* 12 Lou. Ann. R. 421, we regard as a case directly sustaining the views we are endeavoring to present, and so does the case of *City of Louisville* v. *Zanone,* 1 Met. (Ky.) 151.

In both these cases, the improvements for which the assessments were made, were fully carried out and completed before the money was paid, and the parties had received and were enjoying a benefit or consideration. The Louisiana case holds, when payment has been made of a tax which might have been resisted at law, the money cannot be recovered back, if the tax is on property, whether exempt from general taxation or not, and the assessment is rather a toll and contribution than a tax ; and the party paying has derived a direct benefit from the improvements made by the imposition of the tax or assessment. But when the tax is imposed, not for the direct benefit of the party who sues to recover it as having been paid in error, but for the general support of the State, and it has been imposed upon property or a profession exempt by law from taxation, the money must be refunded. The controlling principle in this case is, that the party taxed, though illegally deriving a direct benefit from the improvement his money has contributed to make, shall not be permitted to recover it back.

The Kentucky case was shortly this : In May, 1857, Zanone sued the city of Louisville to recover $147.60, alleging, in substance, that he had paid the money in 1854 to the contractor under an order from the city, for the grading, paving and curbing of a street in front of his lot ; that the ordinance under which the work was done was null and void, and that he had paid the money in ignorance of that fact, and that he was not liable, and paid it in mistake of both law and fact. The city admitted the ordinance was null and void. The improvement of the street in question was in front of plaintiff's property, and he paid the money therefor three or four years before the suit was brought.

The court say, If it appear that the party paying, has received and enjoyed a benefit or consideration, he will not be

aided by a court of equity in recovering back that which he has paid, but which he could not have been compelled to pay had he resisted in the outset. The appellee has received a consideration for the money which he seeks to recover back, and is enjoying a benefit from the work and labor expended by the contractor upon the street in front of his property, and being so, he is not entitled to the relief he asks. He has not shown that he has paid out his money without cause or consideration, nor that he is in honor or good conscience entitled to recover it back again.

The case in 15 Missouri, 574, *Walker* v. *The City of St. Louis,* was decided upon the same ground of benefit and consideration the foregoing cases were placed upon, and that the taxes were voluntarily paid, not by force of, or under a warrant for their collection. The case in 20 Missouri, 145, *Christy's Adm'rs* v. *The City of St. Louis,* was the same as the case of *Walker* v. *The City.* The court refers to that case as the basis of its opinion, and approves the two cases from Maine on which we have commented.

The remaining cases cited by the appellee go only to the doctrine, that ignorance of the law is no excuse, which may have limitations which we do not now define. The case from 2 Sandford, 475, is quite a different case. There was no execution warrant to terrify, and create a necessity or moral duress.

In addition to the cases already noticed, we will refer to some others, which follow the ruling in Strange, *ante.* A payment of money illegally claimed by a collector of the customs, as tonnage duty or light money, and which the plaintiff paid to obtain a clearance of his vessel, was allowed to be recovered back. *Ripley* v. *Gelston,* 9 Johns. 201 ; *Clinton* v. *Strong,* ib. 370. So where money was paid to liberate a raft of lumber detained in order to exact an illegal toll, it was held to be a compulsory payment. *Chase* v. *Dwinal,* 7 Greenleaf R. (Maine) 135. It is there held, where a party has a freedom in the exercise of his will, and is under no such duress or necessity as may give his payments the character of having been made upon compulsion, he cannot recover them back. But where a necessity, which is a kind of moral duress, exists, he may recover. Numerous other cases might be cited to the same effect.

The facts show in this case, that the plaintiff did not know, when he paid the taxes, that the assessment was void. He did not know that the dollar mark was wanting, or, if wanting, that his legal rights were affected by it. He knew that if his personal property was seized by the collector, that he could have no relief by replevin, as could have been had in the case cited, where a distress was threatened. Our statute in relation to re-

plevin, requires the party applying for the writ, to make affidavit that the property has not been taken for any tax, assessment or fine levied by virtue of any law of this State. (Scates' Comp. 226, ch. 88.) He might, perhaps, bring trespass against the officer, but the costs and delay attending such a proceeding, would be far more onerous and expensive than a prompt payment of the money. It is a strong case of moral duress.

But if this payment was not coercive, it was made under a misapprehension of fact. It was supposed and believed that this money was due the city, and under this belief the money was paid. The city claimed this money was due from the plaintiff, and he paid it under that erroneous belief. Here then, the money was paid under a misapprehension of facts, and may be recovered back as for money had and received. If A pays to B the price of a horse, which both parties believe the agent of A has purchased of the agent of B, and it turns out that the horse died before he was delivered, A may recover the money back which he has thus paid. We can see no difference in the principle of such a case and this.

If, however, we are wrong in this view of the case, it seems to us there is another strong ground on which the plaintiff should recover, and that is, a total failure of the consideration for which the money was paid. In projecting this improvement by the city, and raising money by condemning property supposed to be benefited by the improvement, the city undertook that they would proceed according to law in making the assessments, and would devote the money raised to the completion of the undertaking, in a reasonable time. It was on this undertaking the plaintiff, voluntarily, we will say, paid his money. He trusted to the good faith, intelligence and integrity of the city officials, that by no fault, misconduct or miscarriage of their own, the work should be unreasonably delayed; that the improvement should be made in a reasonable time, and fully carried out. The city has failed to do it, and has given, and can give no assurance whatever that the improvement shall be made. The plaintiff may well contend, that he has paid his money on a consideration which has failed—that he has acquiesced in no delay, and that he ought to have his money restored to him, and which he demanded one year before he commenced his suit. *Wright* v. *Colby,* 65 Eng. Com. L. 164; *Devaux* v. *Conolly,* ib. 666; *Wheeler et al.* v. *Board,* 12 Johns. 363; *Colville* v. *Besly et al.,* 2 Denio, 139.

The books are full of cases on this point. The rule is established in England, that a plaintiff having paid his money for shares in a concern which never came into existence, or a scheme which was abandoned before it was carried into execu-

tion, has paid it on a consideration which has failed, and may recover it back as money had and received to his use, unless he can be shown to have consented to, or acquiesced in the application of the money which the directors may have made. *Nockels* v. *Crosby et al.*, 3 Barnwall & Cresswell, 814; *Kempson* v. *Sanders*, 13 Eng. C. L. 321; *Walstab* v. *Spotteswoode*, 15 Meeson & Welsby, 515.

We hold that the action for money had and received, to which this suit commenced before a justice of the peace is kindred, may generally be maintained, where the money of one person has, without any consideration, got into the pocket of another. *Rew* v. *Barker*, 3 Cowen, 280.

In every view in which this case ought to be regarded, we are well satisfied the plaintiff should reclaim this money. The city has given no consideration for it—it was not a voluntary gift to the city—was paid in ignorance of important facts and of the law conjointly, and in honor and conscience the city ought not to retain it. The judgment of the court below is reversed, and judgment entered here for eighty-two dollars eighty cents.

*Judgment reversed.*