# JOHN A. PRICKETT

## v.

# MADISON COUNTY.

*1.* STATEMENT.—A controversy arising out of transactions in connection with the issuing and exchange of new bonds of a county for old ones. Appellant, chairman of the board of supervisors, insisted that he had passed over to the county treasurer bonds to the amount of $303,000, while the treasurer insisted that he had received no more than the receipts called for, namely, $301,000. The matter was made the subject of investigation by the board, and appellant being unable to produce the receipt, the board demanding the deficit should be made good by the treasurer or appellant, the latter, having nothing but his own memorandum to sustain him, finally paid the amount in dispute to the county. Subsequently appellant found, as he claimed, the missing receipt, and brought this action to recover back the money paid to the county.

*2.* EVIDENCE—RECEIPT MAY BE CONTRADICTED BY ORAL TESTIMONY. —A receipt, so far as it goes only to acknowledge payment of money or delivery of property, is merely *prima facie* evidence of the fact, and not conclusive, and therefore the fact recited by it may be contradicted by oral testimony. It was competent for appellant, in narrating the whole transaction, to refer to the receipts, to say that such receipts were given, what was done with them, and, without attempting to recite their contents, to testify independently of them to facts of payment or delivery which they might show if produced.

*3.* ADMISSIONS OF AGENT—WHEN PART OF THE RES GESTÆ.—Where the acts of the agent will bind the principal, the agent's representations, declarations and admissions respecting the subject-matter will also bind him, if made at the same time, and constituting part of the *res gestæ*. Where the court excluded a certain written statement in the form of a memorandum, showing the amount of new bonds received by the treasurer and old ones turned over to the clerk, made by the treasurer while still in office, though not signed and sealed by him, and given to appellant as chairman of the board. *Held*, that this statement may be properly considered as a part of the *res gestæ*, and should have been admitted.

*4.* PAYMENT VOLUNTARILY MADE.—Where one with a full knowledge of the facts makes a voluntary payment of money, without coercion and being under no duress, he can not afterward recover it, even though he may have paid under a mistake of law as to his rights in the premises. But when the payment is made under a mistake of material facts which, if known, would have induced a different action, or under duress or coercion, the rule is otherwise. Where, by reason of the peculiar facts, a reasonably prudent man finds that in order to preserve his property or protect his busi-

ness interests it is necessary to make payment of money which he does not owe, and which in equity and good conscience the receiver ought not to retain, he may recover it back.

5. SAME.—If the payment in this case was made in ignorance of the fact that the receipt was in existence, or that it could be shown that it had existed, and if all the facts which were known to be capable of proof would not have been sufficient to rebut the presumption arising from the absence of the receipt, in view of the way the business had been transacted, then the payment was not made with that full knowledge which would be necessary to constitute a voluntary payment, provided it is apparent that, had such facts been known at the time, the payment would have been withheld.

6. INSTRUCTIONS.—Where a case is put to a jury by instructions upon certain recited facts, great care is necessary to state all the controlling facts fairly, and the safer course is merely to announce the rule of law applicable, without singling out and laying stress upon certain facts claimed to be proved, if there is any serious conflict as to them, or if they involve or are dependent upon other important facts not stated.

7. WITNESS—WHEN EVIDENCE NOT CORROBORATED MAY BE REJECTED. —An instruction that contradiction and impeachment by the evidence in any material point will justify the rejection of all of a witness' evidence not corroborated, is erroneous. The witness must have willfully sworn falsely on a material point to justify such an instruction.

APPEAL from the Circuit Court of Madison county; the Hon. WILLIAM H. SNYDER, Judge, presiding. Opinion filed October 10, 1883.

Messrs. HAPPY & TRAVOUS, for appellant; that the verdict was clearly against the weight of evidence and a new trial should have been granted, cited I. C. R. R. Co. v. Chambers, 71 Ill. 519; McGregor v. McDevitt, 64 Ill. 261; Fox River Mfg. Co. v. Reeves, 68 Ill. 403; Chicago v. Lavelle, 83 Ill. 482; C., R. I. & P. R. R. Co. v. Dingmon, 1 Bradwell, 162; Drury v. Dungan, 2 Id. 15; Dunton v. Chamberlain, 1 Id. 361; Boudreau v. Boudreau, 45 Ill. 480; Ammerman v. Teeter, 49 Ill. 400.

The statement in the handwriting of the treasurer was rendered by him while he was still the agent of the county, and was in relation to the subject-matter of the agency, and should have gone to the jury as an admission against the defendant: Linblom v. Ramsey, 75 Ill. 246; Wagonseller v. Rexford, 2 Bradwell, 455; 1 Greenleaf on Ev., §§ 113, 462; Story on Agency, §§ 134–137; Burlington v. Calais, 1 Vermont, 385;

Mathers v. Phelps, 2 Root, 150; Stockton v. Demuth, 7 Watts, 39; Gilson v. Wood, 20 Ill. 38; Mix v. Osby, 62 Ill. 192; Cook v. Hunt, 24 Ill. 539; M. C. R. R. Co. v. Gougar, 55 Ill. 503; Jenks v. Burr, 56 Ill. 452; La Salle Co. v. Burr, 55 Ill. 452; Burt v. French, 70 Ill. 254; Craig v. Rohrer, 63 Ill. 325; McCoy v. People, 71 Ill. 113; Grimshaw v. Paul, 76 Ill. 166; 2 Starkie on Ev., 5th Am. ed., 22.

It was error to exclude all the evidence of appellant in reference to receipts and his having the treasurer's receipts for the bonds: 1 Phillips on Ev. 587; Hinchman v. Whetstone, 23 Ill. 185; Scholes v. Ackerland, 15 Ill. 474; Keith v. Mafit, 38 Ill. 303; First Nat. Bk. v. Priest, 50 Ill. 321; Kaskaskia Bridge Co. v. Shannon, 1 Gilm. 15; Snapp v. Peirce, 24 Ill. 157.

As to instructions: C., B. & Q. R. R. Co. v. George, 19 Ill. 510; Hosley v. Brooks, 20 Ill. 115; Calhoun County v. Buck, 27 Ill. 440; Pfund v. Zimmerman, 29 Ill. 269; Rice v. The People, 38 Ill. 435; Illinois Cent. R. R. Co. v. Benton, 69 Ill. 174; Bradley v. Parks, 83 Ill. 169; Nichols v. Bradsby, 78 Ill. 44; Lachman v. Deisch, 71 Ill. 59; Alexander v. Town of Mt. Sterling, 71 Ill. 366; I. & St. L. R. R. Co. v. Miller, 71 Ill. 463; Gibson v. Webster, 44 Ill. 483; Harnit v. Thompson, 46 Ill. 460; Bullock v. Narrott, 49 Ill. 62; Bailey v. Godfrey, 54 Ill. 507; Cushman v. Cogswell, 86 Ill. 62.

Messrs. METCALF & BRADSHAW, Messrs. WISE & DAVIS and Mr. J. H. YAGER, for appellee; as to the question of voluntary payment, cited Elston v. City of Chicago, 40 Ill. 514; City of Detroit v. Martin, 34 Mich. 170; Bradford v. City of Chicago, 25 Ill. 411; Stover v. Mitchell, 45 Ill. 213.

WALL, P. J. Appellant brought an action of assumpsit against appellee to recover the sum of $2,000.

The county of Madison had voted to fund its indebtedness by issuing new bonds bearing a lower rate of interest, and in pursuance of this vote the board of supervisors, on the 5th of February, 1877, passed an order providing for the preparation and authentication of the new bonds and their exchange for old ones.

Prickett v. Madison County.

It is unnecessary to state the details of this order, except the provision that the new bonds "when issued, shall be placed "in the custody of the chairman of the board, who, together "with the county treasurer, is authorized to exchange and "dispose of the same, and out of the proceeds thereof to "take up and cancel the bonds, in lieu of which the bonds "alone are to be issued, said bonds to be taken up, canceled, "etc."

The appellant was then chairman of the board, and Hugh E. Bayle was county treasurer, and out of the transactions in connection with the issuing and exchange of the new for the old bonds, has arisen the present controversy. Shortly after the passage of the order, the new bonds were placed in the custody of the plaintiff to the amount of $385,000.

They were then in blank and required the signatures of the chairman of the county board, county treasurer and county clerk and the impression of the county seal.

The process of exchange began. The plaintiff, as chairman of the board, would sign the new bonds as they were called for, hand them to the county treasurer, who would take them to the county clerk, who would sign and seal them and return them so signed and sealed to the county treasurer for his signature.

The treasurer would then give the clerk a receipt for the bonds, and these receipts were passed over by the clerk to the plaintiff and were held by the latter as his vouchers.

In December, 1877, the board of supervisors called for a statement, and a conference was held for that purpose between the finance committee of the board, the plaintiff and the county treasurer.

The plaintiff insisted that he had passed over to the treasurer, by the process above stated, bonds to the amount of $303,000, the treasurer insisting that he had received no more than the receipts called for.

The matter was made the subject of investigation by the board, and the plaintiff being unable to produce the receipt, the board demanded the deficit should be made good by the treasurer or the plaintiff; the latter having nothing but his

Prickett v. Madison County.

own memorandum to sustain him, finally in March, 1878, paid the amount in dispute to the county, the payment being made to Rugger, who had succeeded Bayle in the office of county treasurer, Bayle's term having expired in December, 1877.

Subsequently plaintiff found, as he claimed, the missing receipt, bearing date July 18, 1877, and brought this action to recover back the money paid to the county in March, 1878.

This is in substance the theory of the plaintiff's case. The county resisted the demand, and upon a trial by jury, the issues were found for the defendant, and a motion for a new trial having been overruled, the plaintiff brings the record here, assigning various grounds of error. The evidence was conflicting.

The plaintiff testified in his own behalf, and Bayle was a witness for the defendant, denying that he had received more than $301,000 from the plaintiff, and there was other evidence tending to prove and disprove the plaintiff's allegations. We are urged by the plaintiff to reverse the case, on the ground that the verdict was contrary to the evidence; but after carefully reading and considering all the testimony, we do not feel at liberty to do so. As the case will be again tried, we express no opinion as to the question of fact involved, and will only remark in this connection that there was such a conflict in the evidence as to call for great accuracy in the rulings of the court.

It seems to be conceded, that if the plaintiff's theory of the facts was correct, he would be entitled to recover unless barred on the ground that his payment in March, 1878, was voluntary, and this assumes that the county, and not the plaintiff, must have borne the loss in the first instance, if it was in fact, as plaintiff alleges, chargeable to act of the county treasurer.

The defense is two-fold. First, the treasurer did account for all the bonds received from plaintiff, and second, the payment made by plaintiff was voluntary, and can not be made the basis of a recovery.

It is objected that the court erred in excluding from the

jury a certain written statement made by Bayle, the county treasurer, to plaintiff as chairman, etc.   This statement was in the form of a memorandum, merely showing the amount of new bonds received by Bayle and the amount of old ones by him turned over to the county clerk.   It was made while Bayle was still in office, and though not signed or sealed by him, was made to plaintiff as chairman of the board, and during the process of exchanging the new for the old bonds and was in reference to that matter.   It seems to have been of some importance in connection with other evidence offered by the plaintiff.

It is also urged that the court erred in excluding from the jury certain evidence of the plaintiff in reference to the receipts given by Bayle to the county clerk, covering the $301,-000 of bonds which it is conceded were received by Bayle. These two assignments of error may be considered together, and for convenience we will examine them merely in their inverse order.

With reference to the receipts it may be stated that according to the plaintiff's version, they were passed over to him by the county clerk, and held by the plaintiff as his vouchers until the said conference with the finance committee in December, 1877, when they were returned to Bayle, as the amounts they called for were admitted as correct and audited, and they never afterward were in the plaintiff's possession.

In his testimony the plaintiff made frequent reference to these receipts, by way of explaining the transaction, and to make his narrative connected and intelligible this was unavoidable.   The defendant objected to these references at the time, and at the conclusion of the narrative moved the court to exclude from the jury "all the evidence of this witness, in reference to receipts and his having Bayle's receipts for the bonds."   The court sustained this motion, and it is urged in support of this ruling, that the receipts are the best evidence, and the facts shown by them can not be proved by oral testimony. The receipts referred to were those covering the $301,000 of bonds which, as already stated according to the theory of both sides, were in fact received by Bayle.

The rule requiring the production of the best evidence, or as it is sometimes termed, primary evidence, is usually applied in those cases which relate to the substitution of oral for written evidence, and they may be arranged in three classes, including in the first class those instruments which the law requires to be in writing; in the second, those contracts which the parties have put in writing, and in the third, all other writings, the existence of which is disputed, and which are material to the issue. 1 Greenleaf on Evidence, Sec. 85. The same author in further discussing the subject says, Sec. 90, that when the writing does not fall within either of these three classes, there is no ground for excluding oral evidence, and that the payment of money may be proved by oral testimony though a receipt be taken; and in Sec. 305, he lays down the rule that a receipt, so far as it goes only to acknowledge payment of money or delivery of property, is merely *prima facie* evidence of the fact and not conclusive, and therefore the fact recited by it may be contradicted by oral testimony. In Hinchman v. Whetstone, 23 Ill. 185, it was held that proof of the payment of taxes might be made by oral testimony, though a receipt was given without accounting for the absence of the receipt. So here we think it was competent for the witness in narrating the whole transaction to refer to the receipts, to say that such receipts were given, what was done with them, and without attempting to recite their contents, to testify independently of them to facts of payment or delivery which they might show if present and produced.

The reference which he thus made was in no substantial degree a violation of the rules of evidence, and was so inseparably connected with his story that to strike out all his evidence in this respect, as is shown by the record was done, was error, and must have operated considerably to the prejudice of the plaintiff.

We think it was error also to reject the written statement given by Bayle to plaintiff.

The record shows that the statement was objected to on the ground that it was not an official document, was not rendered

to the board, and if the amounts mentioned therein are included in the receipts they are the best evidence of the facts shown by them.

As has been seen already the last objection is untenable. When the acts of the agent will bind the principal, then his representations, declarations and admissions respecting the subject-matter will also bind him if made at the same time and constituting part of the *res gestæ.* 1 Greenleaf on Ev., Sec. 113.

Regarding Bayle as the agent of the county, this written statement made by him would be competent evidence if it is a part of the *res gestæ.*

The area of events covered by the term *res gestæ* depends upon the circumstances of each particular case.   It will include all the circumstances and declarations growing out of the main fact contemporaneous with it and illustrating its character. The transaction may be a continuing one and embracing many minor and incidental circumstances, and it is not necessary that every one of these should have occurred at the precise time when the principal part happened.   Wharton thus defines the term:   "The *res gestæ* may therefore be defined as those circumstances which are the undesigned incidents of a particular litigated act, and which are admissible when illustrative of such act.   These incidents may be separated from the act by a lapse of time more or less appreciable. They may consist of speeches of any one concerned, whether participant or bystander.   They may comprise things left undone as well as things done.   Their sole distinguishing feature is that they should be the necessary incidents of the litigated act—necessary in the sense that they are a part of the preparations for, or emanations of such act, and are not produced by the calculated policy of the actors."   1 Wharton on Ev., Sec. 259; 1 Greenleaf on Ev., 113; 1 Phillips on Ev., 201.

We are of the opinion the statement may be properly considered as a part of the *res gestæ* and should have been admitted.

The plaintiff also assigns error upon the action of the court in modifying and refusing instructions asked by plaintiff and in giving instructions asked by defendant.

The first and fifth instructions asked by plaintiff were as follows:

1st. "The court instructs the jury that if they believe from the evidence that in 1877 the plaintiff and the then county treasurer were authorized to exchange certain new county bonds of which plaintiff was made custodian for certain old county bonds; that said treasurer on July 18, 1877, received and gave a receipt for $2,000 of said new bonds to exchange as aforesaid, which receipt afterward became lost; that in the month of March, 1878, said new bonds were all accounted for except the amount represented by that lost receipt; that said treasurer denied getting said bonds of the 18th of July, 1877; that in consequence of such denial and his inability to produce said receipt, plaintiff was misled as to the real facts, and under the foregoing circumstances paid for the county $2,000 to redeem a like amount of said old bonds still outstanding, then the jury should find for the plaintiff."

5th. "That if they believe from the evidence the county treasurer received the $2,000 bonds on July 18, 1877, and that the receipt given for the same was afterward lost or mislaid, and that Bayle denied getting said bonds, and under such circumstances plaintiff expended for the county $2,000 to make that amount up, then said payment would not be a voluntary payment."

These the court refused to give as asked and modified them by inserting the words *and did not know* before the words *the real facts* in the latter clause of the first instruction, and by adding the words *but not if he knew all the facts concerning the transaction* to the fifth. And the court refused the following asked by the plaintiff:

9th. "If the jury believe from the evidence that the plaintiff, on the 18th day of July, 1877, turned over, as required, $2,000 in bonds, for which the county treasurer gave his receipt of that date, which receipt was afterward lost or mislaid, and afterward said county treasurer denied having received said bonds, and that by reason of the loss of said receipt and denial of said treasurer, the plaintiff was unable to prove or satisfactorily show that he had accounted for said bonds, and that a refusal

Prickett v. Madison County.

under the circumstances to pay said amount would have cast suspicion and distrust upon him, and injured him in his business and standing as a banker, and under these circumstances the plaintiff paid out for the county the sum of $2,000, then the jury must find for the plaintiff."

It is the law that where one with a full knowledge of the facts makes a voluntary payment of money without coercion, and being under no duress, he can not afterward recover it even though he may have paid under a mistake of law as to his rights in the premises. But where the payment is made under a mistake of material facts, which, if known, would have induced a different action, or under duress or coercion, the rule is otherwise.

In such a case the party who has received the money may be compelled to refund. What amounts to a knowledge of the facts, and what to duress or coercion must always depend upon the peculiar features of the case in hand.

In our Supreme Court reports there are several cases which illustrate the general rule. The cases of La Salle County v. Simmons, 5 Gilm. 513, Bradford v. City of Chicago, 25 Ill. 411, C. & A. R. R. Co. v. C., V. & W. Coal Co., 79 Ill. 121, may be referred to among others. In the first of these cases the county board, without authority of law, advertised that they would let a certain ferry franchise to the highest bidder, and the person then keeping the ferry offered the sum of five hundred dollars, which was accepted. He afterward sued to recover the money so paid and was permitted to do so. The court held, the law having fixed the maximum charge for such privilege, the commissioners had no right to impose any other conditions, and that as the plaintiff was anxious to retain the privilege, the illegal conduct of the commissioners put him in their power, and taking this advantage of him, the money thus obtained was not in a legal sense paid voluntarily and could be recovered.

In the second case the plaintiff recovered money paid to the city upon an invalid assessment, the court holding that he did not know that the legal objection existed when he paid, and as there was a total failure of consideration for the payment the money should be refunded.

In this opinion the court cite and analyze many adjudged cases saying, in conclusion, that money may be recovered back when it has been paid under a "necessity which is a kind of moral duress," and that "the action for money had and received may generally be maintained when the money of one person has, without consideration, got into the pockets of another."

The case in 79th Ill. was where a shipper was suing a carrier for exacting more for the service rendered than was due under a contract which was binding upon the parties. It was urged that as the point was in dispute and the payment made with knowledge of all the facts, it was voluntary, and the money could not be recovered; but the court held that the shipper was "under a sort of moral duress," and that money paid under such circumstances ought not in equity and good conscience to be retained, and recovery was allowed. The principle to be deduced from these cases and the authorities cited in them seems to be that where by reason of the peculiar facts a reasonably prudent man finds that in order to preserve his property or protect his business interests, it is necessary to make payment of money, which indeed he does not owe and which in equity and good conscience the receiver ought not to retain, he may recover it, and so also when such a payment is made in ignorance of material facts which, if known, would have led him to refrain from making the payment.

Recurring now to the modification of the first and fifth instructions, it will be seen that the jury were thereby advised to find against the plaintiff, if he knew all the facts, wholly ignoring the possible element of coercion or duress which may perhaps be regarded as a substantial feature of this case.

In a certain sense it may be said that the plaintiff did know all the facts. He knew or thought he knew he had in fact issued the bonds as shown by his memorandum, and in a general way it would be said that he knew whether his memorandum was true or false. Yet it must be apparent that according to his version of the matter, he had not a full knowledge of the facts, such a knowledge as would have justified a man in his position to risk the consequences of withholding the money.

He may have had great confidence that he was right, yet in

the absence of the receipt, which, according to the course of business they had pursued, should have been forthcoming if he was right, he may, as a prudent man, have been uncertain, and finally come to the conclusion, which was no doubt entertained by the county board who were pressing for payment, that he had been mistaken and that he ought to make up the deficit; in other words he was ignorant of the existence of the receipt which, according to the course of dealing that had been adopted, was necessary to establish that he was not mistaken.

In view of the peculiar facts in this case to which the jury were required to apply the law as given in the instructions, we think the modifications should not have been made as they were. Considering the whole of each instruction, more especially the fifth, as thus modified, it would seem somewhat ambiguous and contradictory, and the jury were probably misled to suppose that if plaintiff knew he did not owe the money he should not have paid. Whereas we think the knowledge necessary to bar him should take a much wider range and embrace all the substantive facts, including the existence of the receipt, or that it had existed, and that such existence could be established. In this connection it is proper to refer to the second instruction given for defendant, which is obnoxious to the same objection, and we think that the jury in considering the whole series would naturally be induced to take a too strict and narrow view in this respect.

If the payment was made in ignorance of the fact that the receipt was in existence, or that it could be shown that it had an existence, and if all the facts which were known to be capable of proof would not have been sufficient to rebut the presumption arising from the absence of the receipt in view of the way the business had been transacted, then the payment was not made with that full knowledge which would be necessary to constitute a voluntary payment, provided it is apparent that had such facts been known at the time, the payment would have been withheld.

We are not prepared to hold that the ninth instruction should have been given as asked by the plaintiff. A man who holds a responsible public position and whose business

relations to the community are such that his standing for property and solvency are especially important and even essential to success, might be justified in making a payment to avoid suspicion in order to protect his business reputation, and the circumstances might be such that a payment so made would be regarded in the same light as a payment to release property from seizure or to enable one to carry on his regular business without interruption. Reputation is property—as much so as land or gold—and is the subject of legal protection. Perhaps the circumstances in this case might have been such as to justify the payment, but we think the instruction somewhat too argumentative and that it assumes with too much emphasis that the facts recited were the unquestioned and controlling facts in the case, whereas according to the theory of the defense this was not true. For instance it is assumed that a refusal to pay under the circumstances would have cast suspicion and distrust upon the plaintiff, and injured him in his standing as a banker. This may have been so, but we hardly think there is enough in the evidence, on this point, to warrant the court in calling the attention of the jury to it in the language of this instruction.

As has often been said by the Supreme Court, where a case is put to a jury by instructions upon certain recited facts, great care is necessary to state all the controlling facts fairly, and the safer course is merely to announce the rule of law applicable, without singling out and laying stress upon certain facts claimed to be proved, if there is any serious conflict as to them, or if they involve or are dependent upon other important facts not stated. We think the ninth instruction properly refused. Referring to the first instruction given for defendant, it will be found still more faulty in this respect and it should have been refused also. The third instruction given for defendant is criticized, as we think, with reason; because it seems to assume that the plaintiff was responsible to the county for any supposed default of the treasurer, and that in case of a loss through this cause his only remedy was against the treasurer.

The county treasurer was acting in pursuance of the order of

the board, and unless the plaintiff remitted to him a part of the duties devolving upon himself, thereby making the treasurer his own agent as to that matter, it could not be said that the plaintiff should be responsible to the county for the act of the treasurer. So far as the treasurer was acting in pursuance of his duty as such, and under the order of the board, his acts were the acts of the county. The instruction assumes there was some sort of community of act or interest between the two officials, making the one responsible for the other, which is not supported by the evidence so far as we have been able to examine it.

The fourth instruction given for defendant is, as seems to be conceded by counsel for defendant, not accurate. It is as follows: "That although they may believe from the evidence that Hugh E. Bayle told John A. Prickett that he would pay him back the $2,000, still such promise of Bayle would not be binding on the county, and the jury should find for the defendant." The plaintiff was of course not seeking to hold the county upon a promise made by Bayle and this evidence was not offered for that purpose, or at least not admissible for such purpose, and while it would be proper to so advise the jury, the final clause was improper, and was doubtless a mere inadvertence.

The sixth for defendant was as follows: "That if they believe from the evidence that the plaintiff is contradicted and impeached by the evidence in any material point, then the jury will be justified in rejecting all his evidence wherein he is not corroborated by other evidence." This announces a rule which, so far as we are aware, is without authority. When a witness willfully swears falsely as to some material point, the whole of his testimony may be rejected except wherein it is corroborated on the maxim, *falsus in uno falsus in omnibus.* City of Chicago v. Smith, 48 Ill. 108; Swan v. The People, 98 Ill. 610.

But it is essential that he must have willfully sworn falsely in a material point.

By this instruction the jury are told that contradiction and impeachment of the evidence in any material point will justify the rejection of all his evidence not corroborated.

In other words, if evidence is produced to contradict and impeach a witness as to one material point, no matter what may be the character of this impeaching or contradictory evidence, then the entire testimony of the witness must depend for its value upon the support of other evidence, no matter how much the jury may be impressed by the candor and intelligence of the witness, and the general truthfulness of his story.

The credit due a witness depends usually upon his intelligence, his opportunity for knowing what he testifies to, his honesty, and his fairness or freedom from bias. He may, as to part of his testimony, be mistaken, and from want of opportunity or intelligence commit a grave mistake, and the residue of his evidence may be entitled to great weight.

If, however, he is found to be dishonest, and it appears that he has knowingly perverted the facts as to a material point, his entire testimony is under a cloud and the law wisely provides that it may all be disregarded unless supported by other and credible evidence.

For the errors indicated the judgment will be reversed and cause remanded.

Reversed and remanded.