## City of Chicago v. James H. Sperbeck.

1. DURESS—*Recovery of Money Paid Under.*—Where, by reason of the peculiar facts, a reasonably prudent man finds that in order to preserve his property or protect his business interests it is necessary to make payment of money, which in fact he does not owe, and which in equity and good conscience the receiver ought not to retain, he may recover it back; and so, also, when such a payment is made in ignorance of material facts which, if known, would have led him to refrain from making the payment.

Assumpsit, for the recovery of money paid under duress. Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the March term, 1897. Affirmed. Opinion filed, March 29, 1897.

City of Chicago v. Sperbeck.

## Statement of the Case.

This is an appeal from a judgment for $661.45, recovered by the appellee, Sperbeck, the case being submitted to the court without a jury, in an action to recover back money paid by him to the city of Chicago under an ordinance providing for the payment of an annual fee of $100 for a license to be taken out by persons desiring to keep intelligence offices in that city.    This ordinance was declared to be invalid in Keim v. City of Chicago, 46 App. Co. 445.    This suit was to recover the sums of money paid for license fees by the plaintiff for keeping an intelligence office during the years 1888, 1889, 1890, 1891 and 1892, respectively.

At the trial the plaintiff, Sperbeck, testified in his own behalf that the license fee in 1892 was not paid by him until after he had been told that if he did not pay it he would be arrested.    That in 1891 the circumstances were much the same as those of 1892.    As to the payment made in 1890, his memory was not certain, but he attempted to state that it was generally understood that they would be arrested if they did not get a license.    As to the payments for the other two years, the plaintiff testified that he paid the license fees in question to save himself from being arrested, on the ground that it was generally understood that he would be arrested if he did not pay the license.

Upon cross-examination the plaintiff admitted that he paid each license fee in question to the city collector at the city hall; that he never was taken there under arrest, or anything of the sort; that he believed the ordinance to be valid, and that he paid the license fee for the reason that he believed that he would suffer the legal penalty of the same, provided the fee was not paid.    He further stated that the paper which was served upon him by the officer was a summons; that he was told so by the officer.    It is not claimed that appellee was ever brought before a magistrate.

It is not claimed by appellee that he ever made any protest against the payment of these license fees.

The ordinance provided that no person shall keep an intelligence office in the city of Chicago without a license, " under the penalty of fifty dollars for each offense."

WILLIAM G. BEALE, corporation counsel; FRANK HAMLIN, assistant corporation counsel, attorneys for appellant.

A. BINSWANGER and FREDERICK A. WILLOUGHBY, attorneys for appellee.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

In County of La Salle v. Simmons, 5 Gil. pp. 515, 516, it was proved by the plaintiff that, in the year 1837, the county commissioners of La Salle county gave notice that they would grant a license for a ferry across the Illinois river, at the town of Ottawa, to the person that would denote the largest sum of money to the county; that up to that time the plaintiff had kept the ferry, and was an applicant for a license to continue the same; that on the day the license was granted, several offers were made for the franchise, when the plaintiff finally bid the sum of $500. The plaintiff then produced in evidence a book, which the county clerk swore was a book belonging to his office, in which the accounts of the treasurer were kept, and in which book the treasurer was charged, under date of July, 1837, with the receipt of $500 from William Simmons as a donation to the county. As to the state of facts the Supreme Court said:

"What was the condition of the plaintiff, and what effect did this unauthorized arrangement of the commissioners have upon him? He had been keeping the ferry, and was anxious to secure a continuance of the privilege; but instead of being permitted to have it by complying with the requisitions of the statute, and submitting to pay the highest tax which could be assessed on the franchise, he was compelled by the force of circumstances, over which he had no control, to advance a large sum of money in order to obtain the license. The illegal conduct of the commissioners put the plaintiff in their power, and taking advantage of his peculiar situation, they obtained money from him to which the county had not the shadow of right. The money was unlawfully and wrongfully obtained, and could not, in equity

and good conscience, be retained by the county. The fact that the commissioners chose to call it a donation, does not change the real character of the transaction. It was merely a device to obtain money which the county had not the slightest right to demand. The money was exacted from the plaintiff under circumstance that strip the transaction of all the features of a voluntary payment. It was in law and fact a compulsory payment, as much so as the payment of usurious interest, which the lender exacts from the borrower, or the payment of illegal charges, which an officer demands as the condition of the performance of official services."

A judgment in this case, for the plaintiff, for the amount so paid by him, together with interest thereon, was sustained.

To the same effect is the case of Harvey and Boyd v. The President et al., of the Town of Olney, 42 Ill. 336. In this case the money was paid under protest, whereas, in County of La Salle v. Simmons, it was paid without protest.

In C. & A. R. R. Co. v. C. V. & W. Coal Co., 79 Ill. 121, a recovery of excessive charges for carrying coal was approved, the court saying: "It can hardly be said these enhanced charges were voluntarily paid by appellees. It was a case of 'life or death' with them, as they had no other means of conveying their coals to the markets offered by the Illinois Central, and were bound to accede to any terms appellants might impose. They were under a sort of moral duress, by submitting to which appellants have received money from them, which, in equity and good conscience, they ought not to retain." Ripley v. Gelston, 9 Johns. 201; Taylor v. Taylor, 20 Ill. 650; Watson v. Woolverton, 41 Ib. 241.

In Bradford v. Chicago, 25 Ill. 411, the recovery of money paid, had in satisfaction of a void special assessment, was sustained, the court saying: "When, therefore, a party, not liable to taxation, is called on peremptorily to pay upon such a warrant, and he can save himself and property in no other way than by paying the illegal demand, he may give notice that he so pays it by duress, and not voluntarily; and, by showing that he is not liable, recover it back as money had and received.

In Prickett v. Madison County, 14 Ill. App. 454, the court, reviewing the authorities, said: "The principle to be deduced from these cases and the authorities cited in them seems to be that where, by reason of the peculiar facts, a reasonably prudent man finds that in order to preserve his property or protect his business interests, it is necessary to make payment of money, which indeed he does not owe, and which in equity and good conscience the receiver ought not to retain, he may recover it, and so also when such a payment is made in ignorance of material facts which, if known, would have led him to refrain from making the payment."

We do not regard the fact that appellee paid without protest as material. Meek v. McClure, 49 Cal. 623.

The judgment of the Circuit Court is affirmed.

MR. JUSTICE SHEPARD.

This case seems to be, in principle, exactly like that of Holder v. City of Galena, 19 Ill. App. 409, the reasoning of which commends itself to me, and I am only restrained from dissenting here in the hope that the Supreme Court may be afforded an opportunity to pass upon the question.