JAMES C. CONKLING
v.
CITY OF SPRINGFIELD.

ACTION TO RECOVER ILLEGAL TAXES—DEMAND.—Where a portion of a tax was illegal, and no demand having been made for such tax although a previous demand was absolutely essential to enable the collector to legally seize property, appellant paid the tax, protesting, however, that a portion of the tax was illegal. *Held* that there was not in this case such an immediate and urgent necessity for the payment of the portion of taxes claimed to be illegal as to imply that it was made upon compulsion.

APPEAL from the Circuit Court of Sangamon county; the Hon. J. A. CREIGHTON, Judge, presiding. Opinion filed January 6, 1886.

Mr. CLINTON L. CONKLING, for appellant; as to payment under compulsion, cited Jenks v. Lima Township, 17 Ind. 328; Atwell v. Zeluff, 26 Mich. 118; Erskine v. VanArsdale, 15 Wall. 76; Bk. of Commonwealth v. Mayor, 43 N. Y. 189; Harvey v. Town of Olney, 42 Ill. 339; Un. Nat. Bk. v. Mayor, 51 N. Y. 638; Preston v. City of Boston, 12 Pick. 14; Boston v. City of Boston, 4 Metc. 190; Borough of Allentown v. Saeger, 20 Penn. 421.

Mr. JOSEPH M. GROUT and Messrs. GREENE, BURNETT & HUMPHREY, for appellee; that unless paid under compulsion or its legal equivalent a payment is voluntary, cited Stover v. Mitchell, 45 Ill. 213; Swanston v. Ijams, 63 Ill. 165; Chicago v. Fidelity Bk., 11 Bradwell, 165; R. R. Co. v. Comm'rs, 98 U. S. 541.

A requirement by statute of demand or personal notification is imperative, and distress without it would be illegal: Cooley on Taxation, 304; Desty on Taxation, 692.

CONGER, J. This was an action of assumpsit brought by appellant to recover back certain taxes claimed to be illegal, which were paid to the city under protest. These taxes were in part u on appellant's personal property, and in part upon his real estate. To succeed in recovering, it devolved upon appellant to show: 1. That the taxes so paid were illegal and void. 2. That they were paid under compulsion or its legal equivalent, or in other words they must not have been paid voluntarily. 3. The city must have received the money. There does not seem to be much question upon the first and third proposition, but the principal controversy arises upon the second. Some of the taxes were paid to the township collector, and others to the county treasurer after the collection books had been returned to him. The manner of payment and character of protest made appears from the evidence of appellant's agent, Clinton L. Conkling, who attended to the payment of taxes for appellant. He says: "I went into the tax office and saw that the receipts were made out and paid over the money for plaintiff (appellant). There were objec-

tions made to some of these taxes by the general public.   It was generally understood the books contained illegal taxes for those years.   My attention was called to it in this way, and we were objecting to the payment of the full amount as levied.   As payments were made, I verbally protested for plaintiff (appellant) against the amount of taxes, because of a portion of the city taxes being illegal.   I paid them for plaintiff (appellant) under protest." It is not shown that any demand had been made by the collector as required by the statute or otherwise, or that any effort was being made by the collector at the time to enforce the collection.   Appellant insists, however, that because the collector's warrant directed, in case of neglect or refusal to pay the taxes appearing upon his book, a levy by distress and sale of personal property, a previous demand should be presumed, and that there was such immediate and urgent necessity resting upon appellant that his payment, made under these circumstances, was under compulsion, or its legal equivalent.   In the case of Union P. R. R. Co. v. Dodge Co. Com., 8 Otto, 541, which was a suit to recover back the taxes paid under protest upon the grounds of illegality, the warrants in the hands of the treasurer authorized him, if default should be made in the payment of the taxes charged upon the list, to seize and sell the personal property of any person making default.   No demand was required by the law, and none was made.   The company had personal property in the county subject to seizure, but no attempt had been made to seize it, and no other notice had been given than such as the law would imply, that payment would be enforced in that way.   At the time the payment was made the company filed with the treasurer a notice in writing that it protested against the taxes paid for the reason that they were illegally and wrongfully assessed and levied, and wholly unauthorized by law, and that suit would be instituted to recover the money back.   Upon these facts Chief Justice Wait says, "The real question in this case is whether there was such an immediate and urgent necessity for the payment of the taxes in controversy as to imply that it was made upon compulsion.   The treasurer had a warrant in his

hands which would have authorized him to seize the goods of the company to enforce the collection. This warrant was in the nature of an execution running against the property of the parties charged with taxes upon the lists it accompanied, and no opportunity had been afforded the parties of obtaining a judicial decision of the question of their liability. As to this class of cases Chief Justice Shaw states the rule in Preston v. Boston, 12 Pick. 14, as follows: " When, therefore, a party not liable to taxation is called upon peremptorily to pay upon such a warrant, and he can save himself and his property in no other way than by paying the illegal demand, he may give notice that he so pays it by duress and not voluntarily, and by showing that he is not liable, recover it back as money had and received." " This," the chief justice continues, " we think is the true rule, but it falls far short of what is required in this case. No attempt had been made by the treasurer to serve his warrant. He had not even personally demanded the taxes from the company, and certainly nothing had been done from which his intent could be inferred to use the legal process he held to enforce the collection, if the alleged illegality of the claim was made known to him. All that appears is, that the company was charged upon the tax lists with taxes upon its real and personal property in the county. After all the taxes had become delinquent under the law, but before any active steps whatever had been taken to enforce their collection, the company presented itself at the treasurer's office, and in the usual course of business paid in full everything that was charged against it, accompanying the payment, however, with a general protest against the legality of the charges and a notice that suit would be commenced to recover back the full amount that was paid. No specification of alleged illegality was made and no particular property designated as wrongfully included in the assessment of the taxes. The protest was in the most general terms and evidently intended to cover every defect that might thereafter be discovered either in the power to tax or the manner of executing the power. Under such circumstances we can not hold that the payment was compulsory in such a sense as to give a

Conkling v. City of Springfield.

right to the present action." By sections 155 and 156 of the Revenue Act of 1872, a demand upon the taxpayer is made indispensable and a distress made or attempted without it, would be illegal.

It was the duty of appellant to pay such taxes as were legal, and had he offered to do that, at the same time clearly designating by his protest such portion as he regarded illegal, how can it necessarily be inferred that the collector would have proceeded to the extremity of making a levy? Is it not more reasonable to suppose under such circumstances, that he would have investigated the question, or had it done by the proper city officers, and if it appeared that the protest was well founded, would have refrained from making a levy? What the collector might or might not have done under any supposed case, is purely speculative, and we only allude to it because we are asked by appellant to hold that under the circumstances of the present case he was within the spirit and reason of the rule in Preston v. City of Boston, *supra*, which is approved by the Supreme Court of this State, in Bradford v. The City of Chicago, 25 Ill. 411: "When, therefore, a party not liable to taxation is called on peremptorily to pay upon such a warrant, and he can save himself and property in no other way than by paying the illegal demand, he may give notice that he so pays it by duress and not voluntarily, and by showing that he is not liable, recover it back as money had and received."

We can not so hold, first, because in the Bradford case the entire tax was void, leaving upon the taxpayer no duty but to protest, while here, a portion of the tax being conceded legal, it was appellant's duty to pay such portion, and point out specifically the part protested against; and second, because in that case no demand was required, but an immediate levy might well be apprehended, while in the present case a previous demand is absolutely essential to enable the collector to legally seize property. We are therefore of opinion there was not in this case such an immediate and urgent necessity for the payment of the portion of taxes claimed to be illegal, as to imply that it was made upon compulsion. If we are

correct in the above views it is not necessary to notice the question of the liability of personal property for taxes upon real estate.

It is urged, however, that the certificates issued by the comptroller by virtue of the authority of the ordinances of the city should be regarded as creating a liability against the city which could be enforced in the present suit; but we think otherwise.

If the payment by appellant was not made under compulsion or its legal equivalent it follows that it was voluntary, and the property in the money passed thereby to the city, and even if these certificates could be regarded as authorized promises on the part of the city to refund the money, they would be without consideration to support them, and consequently could not be enforced.

Finding no error in the record the judgment of the circuit court will be affirmed.

Affirmed.