[Sac. No. 1341. Department Two.—October 2, 1906.]

D. C. WHEELER, and D. W. RIDENOUR, Appellants, v. COUNTY OF PLUMAS, Respondent.

LICENSE TAX FOR REVENUE—REPEAL OF COUNTY ORDINANCE—ILLEGAL ARREST—PAYMENT UNDER DURESS AND PROTEST—RECOVERY BACK.—Where a county ordinance passed under the County Government Act of 1897, imposing license taxes for revenue, was repealed by section 3366 of the Political Code, adopted March 23, 1901, no license tax for revenue thereunder could be thereafter enforced; and where the appellants were thereafter illegally arrested for misdemeanor for non-compliance with such ordinance, a payment under duress and protest to prevent criminal proceedings thereunder was involuntary, and may be recovered back from the county after its rejection of a claim therefor.

ID.—RIGHT TO ACQUITTAL IMMATERIAL.—The fact that the appellants were entitled to an acquittal upon any criminal trial under the ordinance, cannot affect the duress by reason of the arrest and threatened criminal proceedings. They were not required to incur the hazard of a magistrate's decision upon the validity of the ordinance.

ID.—DEPOSIT WITH THIRD PERSON UNDER DURESS—FINAL PAYMENT TO EFFECT RELEASE.—The fact that the money sought to be recovered back was deposited with a third person under duress and protest, and was finally paid by such third person into the county treasury upon demand of the county, and under protest, to prevent further criminal proceedings, did not render the final payment less involuntary or compulsory than the original.

APPEAL from a judgment of the Superior Court of Plumas County. C. E. McLaughlin, Judge.

The facts are stated in the opinion of the court.

Campbell, Metson & Campbell, and Cheney, Massey & Smith, for Appellants.

U. S. Webb, Attorney-General, and L. N. Peter, District Attorney, for Respondent.

LORIGAN, J.—This is an appeal from a judgment in favor of defendant entered against plaintiffs after they had declined to amend upon demurrer sustained to their first amended complaint, and the only question presented is as to the validity of the order sustaining such demurrer.

The facts as gathered from the amended complaint are as follows: The board of supervisors of Plumas County on the 9th of January, 1900, enacted an ordinance entitled "An ordinance levying a license tax on persons, firms, copartnerships and corporations carrying on the business of raising, grazing, herding, or pasturing sheep or lambs within the county of Plumas," etc., wherein it was provided that all persons engaged in such business within the county of Plumas must annually procure a license therefor from the license collector of the county, and pay therefor ten dollars for each one hundred sheep and lambs owned by and under the control of such persons. It further provided that the license collector should have the collection of the license tax provided for by the ordinance, and should direct the district attorney to bring suit in the name of the county to recover such license where any person required by the ordinance to take out a license failed to do so. The ordinance made the license a debt due the county, and provided that the money collected for the license should be paid over to the county treasurer and placed to the credit of the general fund of the county.

In August, 1901, plaintiffs, as copartners, were engaged in the business of raising and grazing sheep, and had in their possession and were grazing within the county of Plumas thirteen thousand sheep and lambs, and had failed to take out a license for such business. During that month the plaintiff D. W. Ridenour was arrested, taken many miles to Quincy, the county seat of Plumas County, and was there held in the

custody of the sheriff under a warrant of arrest issued by the justice of the peace of Plumas Township in Plumas County, based upon a complaint of the license collector, which charged said Ridenour with the commission of a misdemeanor in the carrying on of a business for which a license was required, without first procuring a license. While said Ridenour was in the custody of said sheriff, in order to procure, and as a condition for, his release from custody, he was required to and did deposit with one C. C. Clough $1,301, which was the amount claimed by the license collector as the amount of the license under the ordinance. The money so deposited was the money of the plaintiffs, and, as alleged in the complaint, it was agreed between the plaintiffs and defendant that the money was deposited and paid under protest, and that it should be held by the said Clough until the protest was prepared. Upon deposit of this money the said Ridenour was released from custody, and the case against him in the justice court continued. On April 3, 1902, while the criminal case against said Ridenour was still pending, the plaintiffs prepared and served on the license collector of the county their protest in writing against the payment of the license tax. Thereafter, upon the demand of the defendant, in order to prevent said Ridenour from being again taken into custody under said warrant of arrest and prosecuted for carrying on said business without a license, said $1,301 was paid and delivered to said defendant under protest by said C. C. Clough. The plaintiffs then presented their claim in writing to the board of supervisors of the county, praying for the repayment of the said money, which claim was rejected.

Upon the rejection of said claim the plaintiffs commenced this action, resulting in the judgment appealed from.

Upon this appeal, the argument in the briefs upon both sides is devoted principally to questions as to the validity of such ordinance, and whether at the time of the arrest of Ridenour, and the payment under protest of the license demanded of him, said ordinance and license tax imposed thereby had not been repealed, and the right of the county to collect any tax under the ordinance extinguished and gone.

It will be unnecessary to consider the constitutional objections urged by appellant against the validity of the ordinance, because it is settled by the authorities not only that by legis-

lation of the state subsequent to the enactment of the ordinance it was repealed, but also that the effect of such repeal was to extinguish any right to collect a license tax previous to such appeal.

It will be observed that the ordinance in question was passed by the board of supervisors of Plumas County in 1900, at a time when, by subdivision 25 of section 25 of the County Government Act (Stats. 1897, p. 465), power was conferred upon boards of supervisors of the several counties "to license, for purposes of regulation of revenue, all and every kind of business not prohibited by law and transacted and carried on in such county."

When the ordinance in question was passed this law was in force, but before the arrest of the appellant Ridenour or any proceedings taken to enforce the collection of the license tax imposed by defendant, the legislature, by the act of March 23, 1901 (Stats. 1901, p. 635)—section 3366 of the Political Code—repealed by implication said subdivision 25 of section 25 of the County Government Act, as far as it conferred power to license for purposes of revenue, and restricted the power to matters of regulation alone. (*Ex parte Pfirrmann,* 134 Cal. 148, [66 Pac. 205]; *City of Sonora* v. *Curtin,* 137 Cal. 583, [70 Pac. 674]; *Town of Santa Monica* v. *Guidinger,* 137 Cal. 658, [70 Pac. 632]; *Ex parte Braun,* 141 Cal. 204, [74 Pac. 780].)

The effect of the act of March 23, 1901, was to repeal the ordinance of 1900, if the ordinance was a measure passed for the purpose of revenue and not for regulation, and that it is of the former character alone is not, we think, open to question. It is apparent from the title of the act itself, and the entire absence of any regulatory provisions, that it was intended as a revenue measure, and comes within the scope of the rulings in *City of Sonora* v. *Curtin,* 137 Cal. 583, [70 Pac. 674], and *Town of Santa Monica* v. *Guidinger,* 137 Cal. 658, [70 Pac. 732], and the cases of *Flanigan* v. *County of Sierra,* 196 U. S. 553, [25 Sup. Ct. 314], and *Wheeler & Ridenour* v. *County of Plumas,* 196 U. S. 562, [25 Sup. Ct. 316]. (See, also, *County of Sierra* v. *Flanigan, ante,* p. 770, [87 Pac. 801], written and decided by this court since this portion of this opinion was prepared.)

The cases in the supreme court of the United States were

decided since the appeal in this case was taken, and involved the construction of ordinances practically identical with the one here in question, one of which was a controversy between these same parties. It was there held, following the California cases immediately above cited, that the ordinances there in question were enacted for the purpose of revenue and not for regulation. Equally so is the one under consideration here a revenue measure only, and, under the act of March 23, 1901, adopted after its passage, was repealed, and the effect of the repeal of the power to levy the license tax for revenue was to destroy all right to collect a license tax under the ordinance, even though due before the repeal took effect; the repeal of the power repealed the ordinance and destroyed also all right to collect any tax thereunder. (*Napa State Hospital* v. *Flaherty,* 134 Cal. 315, [66 Pac. 322] ; *City of Sonora* v. *Curtin,* 137 Cal. 583, [70 Pac. 674] ; *Town of Santa Monica* v. *Guidinger,* 137 Cal. 658, [70 Pac. 732].)

And that this was the effect of such repeal of the power upon the right to collect was also declared in the Flanigan and the Wheeler & Ridenour cases in the United States supreme court, above referred to. (See, also, on both the above points, the case of *County of Sierra* v. *Flanigan, ante,* p. 770, [87 Pac. 801], decided by this court and above referred to.)

In passing from this branch of the case it is well to say that the ordinances embraced in the above cases, passed upon by the supreme court of the United States, are entirely different in their terms from the ordinance under consideration in the case of *County of Plumas* v. *Wheeler, ante,* p. 758, [87 Pac. 909], and *County of Sierra* v. *Flanigan, ante,* p. 769, [87 Pac. 913], pending in this court, and the decisions in which cases were filed yesterday—October 1, 1906. These latter ordinances were passed subsequent to March 23, 1901, and purported, by their title, and from their provisions, to be for the purpose solely of regulating the business of raising, grazing, herding, and pasturing sheep or lambs in the respective counties where they were enacted. We have, however, nothing to do with those cases in the consideration of this appeal, and simply refer to them as involving ordinances passed at a different time and containing different provisions.

Recurring now to the matter under consideration. As the ordinance here in question was a revenue measure, and it,

together with any right to collect a license under it, became inoperative upon the passage of the act of March 23, 1901, it necessarily follows that the claim made by the respondent and sought to be enforced by the criminal prosecution taken against said Ridenour, was unauthorized and invalid, and if payment of such illegal demand was compelled by duress, and paid under protest, the plaintiffs have a right to recover it back.

This brings us to the last point made on the appeal—an inquiry as to whether the payment made was a payment under duress, or, as contended by respondent, a voluntary payment.

Under the facts alleged in the complaint, the payment was unquestionably compulsory and involuntary, and we cannot perceive the slightest basis for the contention that it was otherwise. Laying down the general rule as to what constitutes an involuntary payment, it is said: ''The authorities are unanimous to the effect that where one is compelled by duress of his person to pay an unjust or illegal demand, and he makes the payment under protest, such payment is compulsory and can be recovered back.'' (22 Am. & Eng. Ency. of Law, 613.) ''In the absence of specific statutory provision the general doctrines as to the recovery of payments apply to the payment of taxes. Hence, taxes voluntarily paid, without legal duress or coercion cannot be recovered back; but when a person is called upon peremptorily to pay a tax to which he is not liable, and he can save himself or his property in no other way than by paying the illegal demand, he may recover the money so paid as money had and received.'' (27 Am. & Eng. Ency. of Law, 757, 758.) In *Osborne* v. *Robbins*, 36 N. Y. 371, the court of appeals says: ''When a party is arrested without just cause, and from motives which the law does not sanction, any contract into which he may enter with the authors of the wrong, to procure his liberation from restraint, is imputed to illegal duress. It is corrupt in its origin, and the wrong-doer can take no benefit from its execution. In such a case the element of voluntary assent is wanting. The parties do not meet on equal terms. The authority of the courts is perverted to unworthy uses. The instrumentalities employed to produce a consenting will are force and fraud, agencies which the law abhors. The prisoner is at the mercy of the accuser, and he submits to extortion, as the means of deliverance from oppression under the forms of law.''

And in this state in *Brumagim* v. *Tillinghast,* 18 Cal. 272, [79 Am. Dec. 176], involuntary payment is thus defined: "It may be said in general that there must be some actual or threatened exercise of power possessed, or supposed to be possessed, by the party exacting or receiving the payment, over the person or property of the party making the payment from which the latter has no other means of immediate relief than by advancing the money."

Now, from the facts alleged in the complaint it appears that the respondent, the county of Plumas, was asserting against these plaintiffs an illegal and unjust claim for conducting a lawful business. In the enforcement of that claim the agents of the county caused the arrest of one of these plaintiffs, against whom this claim was made; charged him with a criminal offense with a view of enforcing its demand; took him into actual custody, and, as a condition precedent to his obtaining release from the custody of the sheriff under such criminal proceedings, and to avoid imprisonment, compelled him to pay the amount of the license tax which it unjustly asserted was due. The obvious purpose of the criminal prosecution was to attain this end. The process of the criminal court of the county was invoked to accomplish it; the plaintiff Ridenour was, under its process, in duress of imprisonment, and to procure his liberation from such imprisonment—from a danger urgent and immediate—paid under protest the license tax illegally demanded of him. That the payment by the appellant Ridenour of the amount demanded by the respondent, under this ordinance, was unlawfully exacted has been heretofore determined, and that the payment itself was compulsory and involuntary, the recital of the above facts from the complaint, and the application to them of the rules of law above cited, make it so apparent that further discussion of the proposition would be useless.

It is insisted, however, that if Ridenour was arrested and charged with a misdemeanor in conducting a business for which he had not paid a license, he would have been entitled to acquittal on a trial, upon the ground that the ordinance involved in the criminal prosecution was void, and that the proper place to have made that defense was in the criminal case; that if the ordinance was invalid, that finding would

have been sufficient to secure his release, and if he saw fit to pay the license, rather than make a defense against the criminal charge, his act was the result of a choice between a trial of the criminal case and the payment of the money to avoid it, and hence was voluntary. We are not able to grasp the force of this reasoning as applied to the case at bar. It might have more merit if there was not present here the fact that Ridenour was in duress, and could only obtain his release upon payment of the illegal charge. He was not required to pay a fine under the criminal accusation, but as a condition precedent to his release required to pay the illegally exacted amount of the license tax, and could not procure his release from custody otherwise. To this contention of respondent may be aptly applied the language of the supreme court of Illinois, used in *Harvey* v. *Olney,* 42 Ill. 336: "It would be a reproach to our law, if these municipal corporations should be permitted to assume the right to pass ordinances threatening people with heavy fines and a long imprisonment for carrying on a lawful business, and, after extorting a large sum of money for a pretended license by threats of a prosecution, be allowed to come into court and resist repayment by saying, 'Although we did this thing, we had no right to do it, and the ordinance that we pretended was a law was really no law, and these persons should have known better than to have paid us the money.' It is only necessary to say that the town cannot be permitted to defend its wrong by this species of self-stultification. A person to whom a town offers the alternative of paying for a license or undergoing a prosecution before the police magistrate, which would result in fine and imprisonment if the ordinance should be held valid, may certainly pay his money under protest, without losing his rights, and cannot be required to incur the hazard of the magistrate's decision upon the validity of the ordinance, and possibly be driven to a writ of *habeas corpus,* to relieve himself from imprisonment. Such payment would not be voluntary."

It is further claimed that whatever the effect of the original payment to Clough was, the final payment to the county was different. We think not. The payment to Clough was, as we have seen, made under duress and to effect Ridenour's release from custody, and was made under protest. The final

payment to the county was made on demand of the respondent doubtless so as to have the money claimed to be due for the license actually paid into the county treasury. It was paid by Clough upon its demand and under protest, and so paid for the purpose of preventing Ridenour from being again taken into custody under the warrant of arrest issued in the criminal proceeding, and to be relieved from which the original payment had been made. The same compulsion which had required the original payment to Clough, operated as a continuous compulsion on the part of respondent, and eventuated in the payment of the money into the county treasury, and worked no change in the conditions under which Ridenour paid it, and did not render it the less involuntary or compulsory.

There are no further points made in the appeal which we think merit attention.

The judgment of the lower court is reversed, with directions to set aside the judgment entered, overrule the demurrer, and grant leave to defendant to answer.

McFarland, J., and Henshaw, J., concurred.