[Civ. No. 3413. Third Appellate District.—December 29, 1928.]

LYDIA M. GRIMES, Respondent, v. COUNTY OF MERCED, Appellant.

F. M. Ostrander, District Attorney, and Stephen P. Galvin, Deputy District Attorney, for Appellant.

F. W. Henderson for Respondent.

THOMPSON (R. L.), J., *pro tem.*—This is an appeal from a judgment in favor of plaintiff in a suit in *assumpsit* for the repayment of an assessment levied by a water protection district of Merced County, on the ground that the proposed improvements for which the district was organized and the purpose for which the assessment was levied were abandoned.

Prior to 1920 the board of supervisors of Merced County organized the Bear Creek Protection District of that county, pursuant to the protection district statutes of California of 1895, and subsequent amendments thereto (Deering's General Laws, 1923, p. 2488), for the purpose of improving the natural watercourses therein. July 18, 1920, an assessment was regularly levied on all the property within this district, by means of which $7,588 was collected and paid into the county treasury and assigned to the special Bear Creek Protection District fund. The respondent owned lands within the limits of this district, upon which she was assessed the sum of $357.58, which thereupon became a lien upon her property. For failure to pay this tax the property was sold in June, 1921, to the state for the delinquent assessment. In September, 1925, respondent redeemed this property from sale, paying the previous assessment with costs and penalties, amounting in the aggregate to $684.73. This sum was paid into the Bear Creek Protection District fund. Immediately upon levying said assessment in 1920 the board adopted plans and specifications for improving the watercourses in said district. Advertisements for bids for the performance of the proposed work were twice published, but no bids were received. The board was therefore unable to make any contract for the proposed work. The

assessment fund of $7,588 proved inadequate. It would have required $20,000 to execute the plans for which the assessment was levied. The board, however, proceeded to cut brush and clear some of the land by the employment of day labor, for which it expended the sum of $2,292.65. The entire project was abandoned and for nearly four years nothing further was done to carry out the plans for which the district was organized and the assessments collected. The sum of $5,295.35 still remains in this trust fund of the Bear Creek Protection District.

Respecting the abandonment of the proposed project Mr. Pebley, chairman of the board, testified as follows:

"Q. Was the work done? . . . A. No sir. . . . Q. . . . I believe you said you advertised twice and got no bids? A. Yes sir. . . . The reason there were no bids received was . . . (because) they could not do the work for the amount of money that was appropriated. . . . (It would cost) in the neighborhood of $20,000.00. . . . Q. Has there been, at any time since (then) an attempt to go on with the work? . . . A. No sir, there has not, for the reason . . . that the work could not be done for that (amount). It would mean considerable hardship upon the taxpayers of that district. . . . Q. That fund has been inactive since April, 1922? A. I presume that is so. Q. The reason (for this inactivity) is, that the board plans to do no work in that district? A. Yes. . . . Q. The board has done nothing since? A. No sir."

September 5, 1925, the respondent filed a verified claim with the board for the refunding of the assessment which she paid to redeem her property. This claim was rejected January 5, 1926, and this suit was commenced March 26, 1926. Upon trial the court found that the project had been abandoned, as follows: "That by reason of the inadequacy of said fund for said purpose, said board . . . did . . . wholly abandon . . . all work and . . . proposed improvements within said protection district." Thereupon judgment was rendered in favor of the respondent for the sum of $684.73.

The appellant contends that (1) the findings and judgment are contrary to law and are not supported by the evidence, that (2) the respondent failed to comply with the provisions of section 20½ of the Protection District Act

(Deering's Gen. Laws, 1923, Act 6174), or with section 3804 of the Political Code, and (3) that the statute of limitations has barred her action.

■ Section 20½ of the Protection District Act of California provides: "Assessments levied and collected under the terms of this act, if unused and unapplied for a period of one year after the day upon which said assessments become due and payable, may be refunded by the board of supervisors in the manner provided by law for the refund of state and county taxes." The ordinary method of procedure for procuring the refund of state and county taxes is found in section 3804 of the Political Code, which provides: "Any taxes, penalties or costs . . . paid more than once, or . . . erroneously or illegally collected, or . . . in excess of the actual cash value of the property, or erroneously assessed upon improvements on real estate not in fact in existence, may . . . be refunded by the county treasurer. . . . No order for the refund of taxes, penalties or costs under this section shall be made except upon a claim therefor, verified by the person who has paid said tax, . . . which claim must be filed within three years after the making of the payment sought to be refunded." It is apparent that neither of these sections applies to the present case. This action was not tried upon the theory, nor was there any evidence to support the contention that the assessment in question was illegally or erroneously levied or collected, or that the respondent sought to recover an unused portion of an annual fund which was required to be expended within the period of a year. Section 17 of the act does authorize the board of supervisors to provide for the levying and expenditure of annual assessments, when the total amount required is too large to be raised in a single year. Evidently section 20½ does contemplate the refunding of any balance remaining in such annual fund. But the evidence clearly shows that no such plan was ever adopted by the board in the present case. The section is therefore not applicable. Upon the contrary, this suit was evidently maintained upon the theory that the respondent was forced to contribute her assessment to a trust fund which was collected pursuant to statute and held for the specific purpose of improving the watercourses in the Bear Creek Protection District, which project, together with all work and improvements thereon,

was wholly abandoned. The complaint alleged and the court found that, by reason of the inadequacy of the fund provided, the board wholly abandoned all work and improvements within the district.

■ There is no statute in California with respect to the authority or procedure for recovering an assessment erroneously held under such circumstances as this case presents. Where a statute exists which prescribes the procedure for recovering taxes or assessments which have been illegally levied and collected, or withheld from the owner, that statute prevails. But, where the consideration for the levy has wholly failed, the absence of a statute applying to the subject matter will not deprive the claimant of his remedy. Under such circumstances the common-law rule furnishes relief. (Sec. 4468, Pol. Code.) ■ The members of the board who are authorized to organize and operate a protection district, levy, collect, and expend funds for improvements therein, like the trustees of a reclamation district or a swamp and overflow district, are the mere agents of that district and hold its funds as trustees for the property owners and taxpayers who have contributed to the cause. They are bound to expend this money so entrusted to them only in the manner and for the purposes authorized by law. (*Miller & Lux* v. *Batz*, 142 Cal. 447, 450 [76 Pac. 42].)

■ Nor will the statute of limitations bar a recovery which is sought within a reasonable time after knowledge of the abandonment is acquired. (*Miller & Lux* v. *Batz, supra; Bradford* v. *Chicago*, 25 Ill. 411.) Since the purpose for which the district was organized and for which the assessment was levied was abandoned, the consideration for the creation of the fund failed, and the respondent is therefore entitled to recover her proportion of the money which remains in the treasury of the district. (*Bradford* v. *Chicago, supra; McConville* v. *St. Paul*, 75 Minn. 383 [74 Am. St. Rep. 508, 43 L. R. A. 584, 77 N. W. 993]; *Strickland* v. *City of Stillwater*, 63 Minn. 43 [65 N. W. 131]; *Valentine* v. *St. Paul*, 34 Minn. 446 [26 N. W. 457].) In the case of *Bradford* v. *Chicago, supra,* it was held that a special assessment which had been levied and collected for the purpose of opening and improving a street was subject to recovery by the owner of the fund in an action in *assumpsit,* when the work was abandoned and the consideration had

failed. It was there said: "The money raised by them is held in trust . ·. . to be devoted to the particular purpose or benefit intended. It does not become a part of the general revenue and may not be diverted from the improvement in view. . . . It is clear, therefore, that if the object in view should be abandoned, an action for money had and received would lie, to recover back the money on the assessment." In the case of *State* v. *Holmes*, 162 Minn. 173 [202 N. W. 440], it is said: "When money is taken under a special assessment, and the improvements are not made, and the money is kept, there is a failure of consideration."

The appellant has cited a number of cases in support of the well-recognized rule that a voluntary payment of taxes which have been illegally levied or collected precludes the right of recovery. These authorities, however, have no application, for the reason that the assessment in the present case was neither illegally levied nor illegally collected. Upon the contrary, a different rule is invoked, to wit: The abandonment of the project and the failure of consideration. The question of voluntary payment is not involved. When the purpose of an assessment is abandoned and the consideration fails, the owner of money which constitutes a part of the trust fund is entitled to recover his proportion whether it was voluntarily or involuntarily paid. Moreover, the authorities are fairly uniform to the effect that a payment which has been enforced by an officer armed with legal process, or by means of forced sale of property for delinquent taxes, will be deemed to have been made by duress. (26 R. C. L. 456, sec. 412.) When an assessment is collected by duress, it may be reclaimed even though it was not paid under protest. (3 Cooley on Taxation, 4th ed., p. 2584, sec. 1297; *Newberry* v. *Detroit*, 184 Mich. 188 [150 N. W. 838].) While it is true that the immediate consideration for the payment of the assessment in the present case was to secure a reconveyance of title, nevertheless the sale of the property to the state, in the first instance, was conducted pursuant to the statutory process of enforcing the payment of the assessment. The district obtained the benefit of this sale. The money was paid into the district fund. On account of the abandonment of the project it was not expended, but remains on hand for

no purpose whatever. The trust failed through no fault of respondent. The money belongs neither to the state, the county, nor the district. It would be a denial of justice to hold that the owner of this money is without a remedy merely because she was forced to pay it through duress.

Since, in the absence of a statute to the contrary, this remedy of an action in *assumpsit* lies at common law, it is immaterial that the court also found that the respondent complied with the provisions of section 20½ of the act in filing her claim for the refunding of the assessment.

When the judgment is adequately supported by findings upon the material issues, other findings upon unessential issues become harmless, and even though they be erroneous will furnish no ground for a reversal of the judgment. (2 Cal. Jur. 1028, sec. 612.)

The appellant contends that under no consideration may the respondent recover more than her *pro rata* of the $5,295.35 which remained in the district treasury after the payment of $2,292.65 which was expended in the employment of day labor for the purpose of clearing the land. Regarding this amount which was expended for day labor, Mr. Pebley, the chairman of the board, testified: "Q. Following the failure of the board to receive bids, . . . did the board attempt to do any work in the channel of Bear Creek? A. We did. Q. And what was that? A. They cut willows and burned brush. Q. Was that done by day's work? A. Yes (it was done by) day's labor. Q. What is the total amount paid for cutting willows? (Mr. Ostrander, attorney for appellant, answering) A. The amount is the difference between the sum collected ($7588) and the sum now in the fund." The appellant, however, was not entitled to credit for the sum of $2,292.65, for the reason that it was illegally expended and wrongfully diverted from the district fund, contrary to the provisions of the statute. Section 6 of the Protection District Act provides that: "All work which shall exceed an estimated cost of $1000.00, shall be advertised and let to the lowest bidder." Section 26 of that act specifies the procedure required for contracting for the work, including the publication of notices and the awarding of bids to the lowest responsible bidder. A contract for the clearing of the land was not so awarded, and since the cost exceeded the limitation prescribed by statute for the performance of day

labor, this expenditure was illegal and may therefore not avail to credit the appellant in this action.

For the foregoing reasons the judgment should be affirmed, and it is so ordered.

Hart, Acting P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 28, 1929.