[Civ. No. 5152. Third Appellate District.—June 13, 1934.]

ARNOLD C. J. BRANDT et al., Petitioners, v. RAY L. RILEY, as Controller, etc., Respondent.

Harry A. Encell for Petitioners.

U. S. Webb, Attorney-General, and R. L. Chamberlain, Deputy Attorney-General, for Respondent.

THOMPSON, J.—This is a petition for a writ of *mandamus* to compel the State Controller to draw a warrant upon the treasurer of the state of California in payment of two claims for reimbursement of taxes from a special fund created by chapter 968 of the Statutes of 1933, page 2490, which taxes were previously inadvertently levied and collected from the petitioners pursuant to article XIII, section 15, of the Constitution on the erroneous theory that they were operating a trucking system as common carriers.

The petitioners are engaged as copartners in the business of transporting freight over the highways of California by means of automobiles. Their principal place of business is at Los Angeles. It is alleged their business of transporting freight is not conducted over a regular route or between fixed termini, and that it therefore does not constitute the business of a common carrier. Erroneously assuming that petitioners were transporting freight as common carriers, the board of equalization of the state of California illegally levied and collected from them, under the provisions of article XIII, section 15, of the Constitution and the enacting statutes therefor, including sections 3664aa, 3670bb and 3670cc of the Political Code, the sum of $1344.74 in the year 1930 and the further sum of $1460.46 in the year 1931. These payments were not made under written protest. In December, 1933, the petitioners filed with the board of control of the state of California their verified claims for allowance and repayment of said sums under the provisions of chapter 968, *supra*. These claims were presented and allowed in part by two members of the board of control, as provided by the terms of the statute last mentioned. The State Controller, who is the third member of the board of control, rejected the claims on the ground

that they were not paid by the petitioners under written protests as required by the statute.

The petitioners contend that written protests were not necessary as a prerequisite to the allowance or payment of their claims for reimbursement of taxes illegally collected for the reason that they were levied and collected by means which constitute duress on the part of the state, and that the requirement of written protests was waived by the board of control by its allowance of the claims by a majority of the members thereof.

We are of the opinion the petitioners' claims for reimbursement of taxes from the special fund which was created by chapter 968 of the Statutes of 1933, page 2490, were not and could not legally be allowed in the absence of proof that the taxes were originally paid to the state under written protests. That statute specifically creates a special fund of $500,000 which was appropriated from the "Motor Vehicle Fund" to be disbursed by the state board of control in refunding taxes which were erroneously and illegally levied and collected pursuant to article XIII, section 15, of the Constitution. That act limits the conditions under which the board of control may allow or pay claims from that special fund. It is therein provided that such claims for reimbursement must be presented within six months after the act became effective, and that "No such claim shall be examined by the board unless the claimant at the time of payment to the state of the amount claimed protested in writing such payment." Moreover, the statute permits the return of only seventy-five per cent of the amount collected by the state.

There is no doubt that justice requires the reimbursement of taxes which are illegally levied and collected by the state. When taxes are illegally collected by means which amount to duress or coercion, they may be reclaimed, *in the absence of a statute to the contrary*, without proof that they were paid under written protest. (*Whyte* v. *State*, 110 Cal. App. 314 [294 Pac. 417]; *Grimes* v. *County of Merced*, 96 Cal. App. 76 [273 Pac. 839]; 26 R. C. L. 459, sec. 414; 61 C. J. 985, secs. 1263–1267; 2 Cooley on Taxation, 3d ed., p. 1487; 64 A. L. R. 26, note; 34 A. L. R. 976, note.) But a suit for the recovery of taxes which have been illegally collected may be brought against

254

the state only "in such manner and in such courts as shall be directed by law". (Const., art. XX, sec. 6; 2 Cooley on Taxation, 3d ed., p. 1487; *Bekins Van & Storage Co. v. State,* 135 Cal. App. 738 [28 Pac. (2d) 61].) The statute which authorizes the maintenance of a suit against the state to reclaim taxes which have been illegally collected constitutes a limitation of the extent of recovery and prescribes the conditions under which the action may be maintained, which must be substantially complied with. In 2 Cooley on Taxation, *supra,* it is said, regarding the right to reimbursement from the state of taxes which have been illegally levied and collected:

"The state is trustee of the money for the use of the persons paying it; but whether they can bring suit against the state therefor must depend upon the provision of law which it may have made for the purpose."

At page 1503 of the same volume it is further said in regard to the necessity of conforming to the statutory requirement of making a written protest as a prerequisite to the right of recovery:

"Statutes in some states have changed the rule somewhat, and have allowed a recovery in all cases of illegal tax, provided that at the time of payment formal protest was made as the statute prescribes. In respect to such statutes it is only necessary to say that a party relying upon them must be careful to bring his case within their provisions. The protest will not be effective unless made within the time required by the statute. Where the statute requires a written notice of protest, an oral protest, ... is not sufficient."

In 61 C. J., page 993, section 1272, it is said in that regard:

"By force of statute in some of the states, illegal taxes may be recovered back in an action at law when their payment was accompanied by a formal protest against the validity of the taxes and against being compelled to pay them. Such statutes are valid, and are distinct from, and in derogation of, the common-law rule as to voluntary payments, their effect being to make payment of an illegal tax under protest involuntary, irrespective of any question of compulsion or duress within the rules of the common law. While the taxpayer must bring himself within, and

substantially comply with, the terms of the statute, the statute should be liberally construed if necessary to reach and decide the merits.''

■ The statutory requirement of making a written protest against the collection of an illegal tax as a prerequisite to the maintenance of an action against the state for reimbursement of the money paid is intended not only to furnish proof that the payment was involuntarily paid, but also to warn the tax collector that the tax is claimed to be illegal. (*Meek* v. *McClure*, 49 Cal. 623, 628.) In the case last cited, wherein the property owner sought to recover taxes alleged to have been illegally levied and collected under written protest, the court says with relation to the purpose of the protest:

''The purpose and effect of the protest is not satisfactorily defined in any of those cases. In one of them it is said that one purpose of the protest is to take from the payment its voluntary character; but it is manifest that it is involuntary only, because of the coercion, the duress, or the undue advantage exercised or possessed by the party to whom the payment is made. . . . The only purpose of the protest was to give the officer notice that the money was not legally due, and thus to enable the officer to protect himself against the consequences of an action to recover the money back from him. The officer is thereby put on inquiry as to whether the money is legally due; and if he finds that the demand is illegal, he may protect himself by refusing to receive the money; or, if he finds that it is of doubtful legality, he may take the proper steps to avoid, or protect himself against responsibility. If the officer has notice of the matter which renders the demand illegal, another notice in the form of a protest would be useless; but if he has no knowledge of such matter, he ought not to be subjected to the costs and consequences of an action to recover the money from him.''

■ In the present case the payment of the taxes under written protest is a necessary prerequisite to the maintenance of an action for reimbursement, not only because it is a statutory requirement, but also for the reason that it affirmatively appears from the petition that the payments were made through mutual mistake, and that neither the

state officer nor the petitioners then knew that the tax was illegal.

The allowance of the petitioners' claim under the provisions of chapter 968 of the Statutes of 1933, page 2490, by two members of the board of control does not entitle them to a warrant upon the treasurer in payment thereof, in the absence of the approval of the State Controller. The board of control consists of three members as provided by section 663 of the Political Code. These members are designated as the director of finance, the chief of the division of service and supply of the department of finance and the State Controller. That section does state that the concurrence of a majority of the members of the board "shall be deemed to be the finding, opinion and order of the board". It is contended by the petitioners that the approval of the claim in this matter by a majority of the members of the board renders the allowance of the claim final and conclusive without the approval of the State Controller, for the reason that chapter 968, *supra*, gives the board the exclusive right to audit, allow and disburse the funds of that special appropriation. The statute provides in part:

"Out of the net receipts of the motor vehicle fund, . . . there is hereby appropriated the sum of five hundred thousand ($500,000) dollars, or so much thereof as may be necessary, *to be disbursed by the State Board of Control* upon claims filed with the State Controller for the purpose of refunding to persons, firms, associations and/or corporations moneys paid by virtue of invalid demands by State of California, pursuant to the provisions of Section 15, Article XIII of the Constitution of California. The State Board of Control shall promulgate rules and regulations for the presentation, examination and allowance of any such claims; provided, however, . . . that no such claim shall be examined by the board unless the claimant at the time of payment to the State of the amount claimed *protested in writing such . payment,* . . . and the State Controller is hereby instructed to set up the appropriation hereby made accordingly for the purpose of apportioning the said net receipts."

Section 664 of the Political Code, as amended by the Statutes of 1933, chapter 1027, page 2618, authorizes the

allowance of claims against the state, and the drawing of warrants in payment therefor, only upon the approval and audit of the State Controller. It reads in part:

"The board [of control] by a majority vote shall adopt general rules and regulations, limiting the amount of expenses and allowances to be paid, . . . and governing the presentation and audit of claims against the State for which an appropriation has been made or for which a state fund is available. In accordance with such general rules and regulations of said board, *the State Controller shall audit such claims before drawing his warrant therefor as prescribed by law. . . .*"

So, also, section 665 of the same code provides:

"If the state controller approve such claim under and in accordance with said rules and regulations, he shall draw his warrant for the amount so approved in favor of the claimant.

"If the state controller disapprove of any claim, the same shall be filed with the records of the board of control in such manner as may be prescribed in the general rules and regulations of said board for the presentation and audit of claims, together with a statement showing such disapproval and the reasons therefor."

██ In determining the procedure necessary to the allowance and payment of claims against the special fund which was created by the provisions of chapter 968, *supra,* that statute should be read and construed in connection with sections 664 and 665 of the Political Code. There appears to be nothing in chapter 968, *supra,* inconsistent with the general provisions of law requiring the audit of the State Controller of all such claims as a prerequisite to the drawing of his warrant for the payment thereof. We are of the opinion that warrant upon the treasurer for the payment of claims upon that special fund may not be drawn except upon the audit of the State Controller. It is the duty of the State Controller, under the provisions of subdivision 17 of section 433 of the Political Code to refuse to draw his warrant in payment of any claim against the state unless the allowance of the claim is "authorized by law". In the present proceeding the petitioners' claims were not authorized by law since the payments were not protested in writing as the statute requires. The approval

258

of these claims by the two members of the board of control was therefore in conflict with law, unauthorized and ineffectual. For that reason the Controller properly refused to audit the claims or draw his warrant upon the treasurer in payment thereof.

For the foregoing reasons, the writ of *mandamus* is denied.

Plummer, J., and Pullen, P. J., concurred.

An application by petitioners to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 9, 1934.