[L. A. No. 16598. In Bank.—January 2, 1940.]

SOUTHERN SERVICE COMPANY, LTD. (a Corporation), Plaintiff and Appellant, v. COUNTY OF LOS ANGELES (a Body Corporate and Politic), Defendant and Appellant; CITY OF LOS ANGELES (a Municipal Corporation), Intervener and Respondent.

(1)

2

Allard, Holbrook & Whyte, Stater & Dawson, Holbrook & Tarr, Holbrook, Taylor, Tarr & Reed, Bailie, Turner & Lake, Cruickshank, Brooke & Dunlap, Evans & Boyle, Meserve, Mumper, Hughes & Robertson, Overton, Lyman & Plumb, Loyd Wright and W. Sumner Holbrook, Jr., for Plaintiff and Appellant.

Burr A. Brown, City Attorney (Seal Beach), James Davis, District Attorney (Siskiyou County), L. B. Fowler, City At-

torney (Chowchilla), Dorsey G. Whitelaw, City Attorney (El Centro), L. W. Cottingham, City Attorney (Oceanside), Charles F. Blackstock, City Attorney (Oxnard), I. H. Ham, City Attorney (Tulare), Norman Johnson, City Attorney (Fort Bragg), Guy Lewis, City Attorney (Hawthorne), E. L. Maxwell, City Attorney (Mountain View), Edwin P. Jacobsen, City Attorney (Delano), Newlin & Ashburn, Wood, Crump & Rogers, Chandler, Wright & Ward, Chandler P. Ward, Roy A. Linn, Clock, McWhinney & Clock, Laurence B. Martin, David E. Hinckle, B. J. Feigenbaum and U. T. Clotfelter, as *Amici Curiae,* on Behalf of Plaintiff and Appellant.

Everett W. Mattoon, County Counsel, J. H. O'Connor and S. V. O. Prichard, Assistant County Counsel, and A. Curtis Smith, Deputy County Counsel, for Defendant and Appellant.

Ray L. Chesebro, City Attorney, Leon Thomas David and F. Von Schrader, Assistants City Attorney, S. B. Robinson, Chief Assistant City Attorney, John W. Holmes, Russell B. Jarvis, Rex B. Goodcell, Jr., and Franklin W. Peck, Deputies City Attorney, Randolph Karr, formerly Deputy City Attorney, and Henry C. Ramsey for Intervener and Respondent.

James B. Abbey, District Attorney (San Diego County), Carroll H. Smith, Deputy District Attorney, Harold P. Huls, City Attorney (Pasadena), Dayton L. Ault, City Attorney (San Diego), U. S. Webb, former Attorney-General, H. H. Linney, Deputy Attorney-General, James J. Arditto, Deputy Attorney-General, Carl F. Farbach, General Counsel (Federal Emergency Administration of Public Works), Samuel Taylor, Regional Counsel, John F. Harrell, W. H. Orrick, George Herrington, Orville A. Rohlf, Warren A. Palmer, Orrick, Dahlquist, Neff & Herrington, O'Melveny, Tuller & Myers, James L. Beebe, H. G. Baron, City Attorney (Taft), C. M. Ozias, City Attorney (Fresno), E. I. Feemster, City Attorney (Visalia), J. E. Greene, City Attorney (Dinuba), Richard C. Waltz, City Attorney (Beverly Hills), Glenn West, City Attorney (Lodi), Maxwell Nichols, City Attorney (Santa Barbara), Earl Warren, District Attorney (Alameda County),

James B. Abbey, District Attorney (San Diego County), Hurley T. Bailey, City Attorney (Santa Maria), George Wadsworth, City Attorney (Tracy), P. J. Tscharner, City Attorney (Azusa), Carlton H. Casjens, City Attorney (Bell), Christopher J. Griffin, City Attorney (Huntington Park), Hugh B. Bradford, City Attorney (Sacramento), J. W. Coleberd, City Attorney (South San Francisco), Burr A. Brown, City Attorney (Seal Beach), Francis R. Hall, City Attorney (Santa Cruz), H. Scott Jacobs, City Attorney (Hanford), Charles D. Warner, City Attorney (Chino), H. F. Orr, City Attorney (Ventura), Ralph W. Swagler, City Attorney (Burbank), Thomas W. Bewley, City Attorney (Whittier), E. P. Mulholland, City Attorney (Signal Hill), L. S. Hitchcock, City Attorney (Santa Rosa), Russell Scott, City Attorney (Salinas), Paul B. Wilson, City Attorney (Redlands), A. D. Mitchell, City Attorney (Ontario), Waldo Willhoft, City Attorney (Colton), Ray H. Overacker, City Attorney (Huntington Beach), Raymond Thompson, City Attorney (Fullerton), Archer Bowden, City Attorney (San Jose), John J. O'Toole, City Attorney (San Francisco), as *Amici Curiae,* on Behalf of Defendant and Appellant, and Intervener and Respondent.

SHENK, J.—The plaintiff commenced an action under section 3804 of the Political Code to recover taxes alleged to have been illegally collected pursuant to an excessive tax rate adopted by the board of supervisors for the tax year 1933–1934. (See *Otis* v. *Los Angeles County,* 9 Cal. (2d) 366 [70 Pac. (2d) 633].) The plaintiff recovered a judgment for items aggregating $50.16. As to other items the court rendered judgment for the intervener, City of Los Angeles, and the defendant, County of Los Angeles. Both the plaintiff and the defendant, County of Los Angeles, have appealed from the judgment and the appeals are now pending in this court.

The present proceeding is a motion on behalf of the County of Los Angeles and the City of Los Angeles to dismiss the plaintiff's appeal and for a direction to the trial court to dismiss the action on the ground that the same has abated by reason of the provisions of chapter 159, Statutes of 1939. The moving parties will be referred to as the defendants.

Chapter 159, approved May 16, 1939, is entitled: "An Act to Add Sections 3804.1, 3804.2 and 3804.3 to the Political

Code, and to Add Sections 4806, 5097.3 and 5097.4 to the Revenue and Taxation Code, relating to Property Taxation, Including Refund and Actions for Recovery of Taxes Heretofore Erroneously or Illegally Levied."

Section 1 adds section 3804.1 to the Political Code, reading as follows:

"No refund shall be made under section 3804 of this code, nor shall any action be hereafter commenced nor shall any action heretofore commenced be further prosecuted for the recovery, of any tax voluntarily paid which was levied prior to January 1, 1939, claimed to be erroneous or illegal, by reason of errors, omission or illegalities in preparing, transmitting, computing, determining or fixing the budget or tax rate or rates of any county, city and county, school district, municipal corporation or other public corporation, or political subdivision, in any case in which the taxes collected from such erroneous or illegal levy have been applied in the next or any succeeding fiscal year to reduce the tax levy for such year, or have been expended, appropriated, or applied for a public purpose. For the purposes of this section, the mere payment of a tax under protest shall not be deemed to constitute such payment an involuntary payment."

Sections 3804.2 and 3804.3 also added to the Political Code by the new enactment provide for the time within which and the conditions under which claims for certain refunds of taxes may be filed; and the provisions thereof need not be specifically noted at this time. Sections 4806, 5097.3 and 5097.4 added to the Revenue and Taxation Code incorporate the language of sections 3804.1, 3804.2 and 3804.3 respectively added to the Political Code, to become effective only upon the adoption of a Revenue and Taxation Code by the 53d legislature. (Chap. 154, Stats. of 1939.)

In support of their motion the defendants have filed affidavits presenting further facts to establish the applicability of section 3804.1, namely, facts showing that the taxes collected from such erroneous or illegal levy have been applied in the next or a succeeding fiscal year to reduce the tax levy for such year, or have been expended, appropriated or applied for a public purpose. Upon the showing made the defendants are entitled to the relief sought by their motion, unless the provisions of section 3804.1 of the Political Code violate some provisions of the state or federal Constitutions.

The first contention to be noted in that respect is that section 3804.1 violates the constitutional guaranties of due process and equal protection and the prohibition against the enactment of laws impairing contract and vested rights. In order to support its arguments in this connection the plaintiff contends, and must necessarily contend, that the payment of the taxes sought to be recovered was made involuntarily.

The plaintiff paid the taxes herein involved prior to the date when they would have become delinquent. The payment was not made under protest. Subsequently the plaintiff filed its claim pursuant to section 3804 of the Political Code for a refund of that portion of the 1933–1934 tax payment claimed to have been excessive by reason of alleged errors in the preparation of the budget or the calculation of the tax rate, or both. The board of supervisors rejected the claim and the plaintiff filed its action thereon, which action was still pending when the legislature in 1939 added said section 3804.1 to the Political Code. The effect of that legislative action, pursuant to cases hereinafter cited, was to cut off the remedy to the plaintiff and to terminate the action herein unless the plaintiff had a vested property interest in or a contractual right to recover the claimed excessive portion of the taxes so paid.

It is the settled law of this state that illegal taxes voluntarily paid may not be recovered by the taxpayer in the absence of a statute permitting a refund thereof; and in the absence of such statute only illegal taxes paid under duress, coercion or compulsion are considered to have been involuntarily paid and therefore recoverable. (*Brumagim* v. *Tillinghast,* 18 Cal. 265, 269, 271 [79 Am. Dec. 176] ; *Grimes* v. *County of Merced,* 96 Cal. App. 76, 81–83 [273 Pac. 839] ; *Maxwell* v. *San Luis Obispo County,* 71 Cal. 466 [12 Pac. 484]. See, also, *Brandt* v. *Riley,* 139 Cal. App. 250 [33 Pac. (2d) 845], and cases hereinafter cited.)

The plaintiff concedes that the common law as to what constitutes an involuntary payment is the rule for the guidance of this court in determining whether the payment of the tax herein was voluntary or involuntary. The presence or absence of a written protest does not appear to be the distinguishing feature. That is, if the taxes were paid involuntarily, namely, ''by means which amount to duress or

coercion, they may be reclaimed . . . without proof that they were paid under protest''. (*Brandt* v. *Riley, supra,* at page 253, citing *Whyte* v. *State,* 110 Cal. App. 314 [294 Pac. 417]; *Grimes* v. *County of Merced,* 96 Cal. App. 76 [273 Pac. 839], and other authorities.) On the other hand it has also been held that the filing of a protest with a payment of illegal taxes otherwise voluntarily made does not deprive the payment of its voluntary character. (*Brumagim* v. *Tillinghast, supra,* at page 275; *Bucknall* v. *Story,* 46 Cal. 589 [13 Am. Rep. 220]; *Bank of Woodland* v. *Webber,* 52 Cal. 73; *Merrill* v. *Austin,* 53 Cal. 379; *Dear* v. *Varnum,* 80 Cal. 86, 89 [22 Pac. 76]; *Justice* v. *Robinson,* 142 Cal. 199 [75 Pac. 776]; *Warren* v. *City and County of San Francisco,* 150 Cal. 167 [88 Pac. 712]; see, also, *Meek* v. *McClure,* 49 Cal. 623.) The plaintiff argues that decisions in this state and elsewhere upon which it relies establish that the payment involved herein was involuntary in character. But the contrary appears from an examination of the pertinent decisions in this state. In the case of *Brumagim* v. *Tillinghast, supra,* at page 271, it was said: ''The illegality of the demand paid constitutes of itself no ground for relief. There must be, in addition, some compulsion or coercion attending its assertion, which controls the conduct of the party making the payment. It is the compulsion or coercion under which the party is supposed to act which gives him a right to relief. If he voluntarily pay an illegal demand, knowing it to be illegal, he is, of course, entitled to no consideration; and if he voluntarily pay such demand in ignorance or misapprehension of the law respecting its validity, he is in no better position, for it would be against the highest policy to permit transactions to be opened upon grounds of this character.'' The court there held to have been voluntary a payment of illegal taxes imposed upon bills of lading for transportation of gold and silver, because the payment was made without the compulsion or coercion which the law recognized as sufficient to render payments involuntary. It defined such compulsion or coercion in general as ''some actual or threatened exercise of power possessed, or supposed to be possessed, by the party exacting or receiving the payment over the person or property of the party making the payment from which the latter has no other means of immediate relief than

by advancing the money''. The court followed many cited cases from other jurisdictions.

In *Williams* v. *Corcoran,* 46 Cal. 553, 556, it was held that a threat to sell lands, made before the taxes had become delinquent, was idle and did not amount to coercion, citing *Bucknall* v. *Story, supra,* which approved and followed the rule of *Brumagim* v. *Tillinghast, supra,* to the effect that where there is no legal duress or coercion, the payment is voluntary.

In *Bank of Woodland* v. *Webber, supra,* the court held that the payment of a tax under protest was voluntary where the payment was made before delinquency.

Relying on the last cited case and the decision in *Bucknall* v. *Story, supra,* the court in the case of *Bank of Santa Rosa* v. *Chalfant,* 52 Cal. 170, held that a threat to sell made before delinquency—the defendant not being armed with any authority real or apparent to carry out the threat—did not constitute legal duress and a payment of taxes made thereunder was a voluntary payment.

Consistently it was also so held in *Wills* v. *Austin,* 53 Cal. 152, 180, and that payment of an illegal tax was voluntary even when made pursuant to the collector's threat to add the five per cent penalty and to place the property on the delinquent list. A similar decision was handed down in the case of *Merrill* v. *Austin,* 53 Cal. 379, while in *De Fremery* v. *Austin,* 53 Cal. 380, the facts were held not to be controlled by the foregoing cases because payment of the tax was made after the delinquent list had been issued to the tax collector giving him authority to seize and sell the property.

The rule of *Brumagim* v. *Tillinghast, supra,* was considered as established in 1886 when it was followed in the case of *Maxwell* v. *San Luis Obispo County, supra.* Similar recognition of the rule appears in *Meek* v. *McClure, supra; Younger* v. *Board of Supervisors,* 68 Cal. 241, 242 [9 Pac. 103] ; *Cooper* v. *Chamberlain,* 78 Cal. 450 [21 Pac. 14] ; *Dear* v. *Varnum,* 80 Cal. 86 [22 Pac. 76] ; *Phelan* v. *San Francisco,* 120 Cal. 1 [52 Pac. 38] ; *San Diego L. & T. Co.* v. *La Presa School Dist.,* 122 Cal. 98 [54 Pac. 528] ; *Wheeler* v. *Ridenour,* 149 Cal. 782 [87 Pac. 802] ; *Warren* v. *City and County of San Francisco,* 150 Cal. 167 [88 Pac. 712] ; *Justice* v. *Robinson,* 142 Cal. 199 [75 Pac. 776] (see, also, *Spencer* v. *City of Los Angeles,* 180 Cal. 103 [179 Pac. 163]), and other cases, such as *Hayes* v.

*County of Los Angeles,* 99 Cal. 74 [33 Pac. 766], and *Stewart Law & Coll. Co.* v. *County of Alameda,* 142 Cal. 660 [76 Pac. 481]. The particular circumstances involved in the case of *Whyte* v. *State, supra,* relied on by the plaintiff, prevent what was said concerning the coercive features appearing in that case from becoming applicable here.

The case of *Hellman* v. *City of Los Angeles,* 147 Cal. 653 [82 Pac. 313], recognized that the foregoing was the general common-law rule which, however, has been abrogated by the adoption of sections 3804 and 3819 of the Political Code so as to permit recovery although the payments were voluntary in all those cases coming within the provisions of the code sections. Section 3819 of the Political Code, allowing an action to recover a refund of certain taxes paid under protest, was involved in the Hellman case. In that case the court stated that the statute in derogation of the common-law rule was "befitting to this more enlightened age". ■
It is obvious, however, from the language of section 3804.1, adopted in 1939, that the legislature had before it facts which satisfied it that the motives of justice which prompted a previous legislature to create the remedy for refund of illegal taxes voluntarily paid do not apply where the illegality attached by reason of a miscalculation in the tax rate and the resulting collections effected a proportionate decrease in the tax rate in a subsequent year. In such a case every taxpayer in the district is proportionately affected and has an equal right to recover the portion of the tax which is excessive by virtue of the erroneous calculation, or, if uniformly the excess is not refunded, all are proportionately benefited by a decrease in the tax rate in a subsequent year. ■ Therefore, to obtain an orderly and economic routine in the collection of taxes the legislature was prompted to correct an existing condition by withdrawing the application of the Political Code sections creating the right of refund, and expressly terminating all pending actions based thereon, except where the payments were involuntary in accordance with the common law adopted in this state. The withdrawal of the remedy in such cases does not contravene the policy exemplified in sections 3804 and 3819 of the Political Code, but in fact is consistent therewith. This is so for the reason that equality among taxpayers is maintained more uniformly and economi-

cally by withdrawing the statutory remedy in the case of such blanket errors and permitting the application of the excess to reduce the tax rate uniformly on all affected property in a subsequent year. ■ Therefore, the 1939 additions to the Political Code indicate the legislative purpose to declare that the policy denominated "justice", which "requires the reimbursement of taxes which are illegally levied and collected" (*Brandt* v. *Riley*, 139 Cal. App. 250, 253 [33 Pac. (2d) 845]), does not necessarily extend to situations such as the present, but more correctly to those situations only where overpayment of taxes has resulted by reason of overassessment 'or other error affecting a particular person or piece of property as distinguished from other persons or property not similarly affected, thus resulting in an inequality. (See *Hayes* v. *County of Los Angeles*, 99 Cal. 74, 78, 79 [33 Pac. 766].) The legislature has now declared a rule to govern a situation which this court, because of controlling general rules of construction of tax statutes, was precluded from applying in the case of *Otis* v. *Los Angeles County, supra*. Every intendment, under well-known principles, is favorable to the validity of the enactment. What we have said indicates that the distinction made by the legislature is not one which may be held to violate the equal protection clause of the federal Constitution invoked by the plaintiff, but it is apparent that it is founded on a rational basis. The fact that the provision does not apply indefinitely *in futuro* is a matter solely of legislative concern and does not affect its validity.

■ The foregoing discussion and review leads to the conclusion that the plaintiff possessed no right or remedy pursuant to section 3804 of the Political Code which existed apart from the statute itself and which the legislature could not cut off by repeal. ■ The general relationship of sovereign and taxpayer is not founded on nor does it create any contractual rights. (*Perry* v. *Washburn*, 20 Cal. 318, 350; *Spurrier* v. *Neumiller*, 37 Cal. App. 683 [174 Pac. 338].) A right to a credit or refund of taxes is purely statutory. (*Spurrier* v. *Neumiller, supra; Bell* v. *County of Los Angeles*, 90 Cal. App. 602 [266 Pac. 291], citing *Brooks* v. *County of Tulare*, 117 Cal. 465 [49 Pac. 469].) The legislature may · withdraw such a statutory right or remedy, and a repeal of such a statute without a saving clause will terminate all pend-

ing actions based thereon. (*Napa State Hospital* v. *Flaherty*, 134 Cal. 315 [66 Pac. 322]; *Moss* v. *Smith*, 171 Cal. 777 [155 Pac. 90]; *Callet* v. *Alioto*, 210 Cal. 65 [290 Pac. 438]; *Penziner* v. *West American Finance Co.*, 10 Cal. (2d) 160, 170 [74 Pac. (2d) 252]; *Spurrier* v. *Neumiller, supra*.) Our conclusion that the legislature had the power to enact a statute which would cut off the right theretofore accorded the plaintiff and terminate pending actions under section 3804 is also supported by the case of *People* v. *Lindheimer*, 371 Ill. 367 [21 N. E. (2d) 318]. In that case the writ of *mandamus* was sought to collect a refund of taxes erroneously but voluntarily paid. Before final judgment the statute giving the right to the refund was repealed. It was said: "The obligation of the citizen to pay taxes is purely a statutory creation, and taxes can be levied, assessed and collected only in the method pointed out by express statute. . . . So, also, any right to a refund or a credit of taxes is purely of statutory origin, and in the absence of an authoritative statute, taxes voluntarily, though erroneously, paid cannot be recovered, nor even voluntarily refunded by a county, although there may be justice in the claim. . . . there is no vested right in a public law which is not in the nature of a private grant, and, however beneficial a statute may be to a particular person or however injuriously the repeal may affect him, the legislature has the right to abrogate it." The court concluded that the right to refund was cut off by the unconditional repeal of the statute creating it, saying: "The unconditional repeal of a special remedial statute without a saving clause stops all pending actions where the repeal finds them. If final relief has not been granted before the repeal goes into effect it cannot be granted afterwards, even if a judgment has been entered and the cause is pending on appeal. The reviewing court must dispose of the case under the law in force when its decision is rendered."

In the case before us, therefore, the legislature was acting within its constitutional powers when it withdrew the right to a refund of such illegal taxes and cut off the remedy by action including all pending actions, saving only the common-law right to a refund of taxes involuntarily paid.

The numerous cases upon which the plaintiff relies, such as *Fall River Valley Irr. Dist.* v. *Mt. Shasta Power Corp.*, 202 Cal. 56 [259 Pac. 444, 56 A. L. R. 264]; *Callet* v. *Alioto*, 210 Cal. 65 [290 Pac. 438]; *La Forge* v. *Magee*, 6 Cal. 650;

*Grimes* v. *County of Merced,* 96 Cal. App. 76 [273 Pac. 839]; *Chapman* v. *City of Brooklyn,* 40 N. Y. 372; *Pacific Mail Steamship Co.* v. *Joliffe,* 69 U. S. (2 Wall.) 450 [17 L. Ed. 805]; *Ettor* v. *City of Tacoma,* 228 U. S. 148 [33 Sup. Ct. 428, 57 L. Ed. 773]; *Forbes Pioneer Boat Line* v. *Board of Commrs.,* 258 U. S. 338 [42 Sup. Ct. 325, 66 L. Ed. 647]; *Coombes* v. *Getz,* 285 U. S. 434 [52 Sup. Ct. 435, 76 L. Ed. 866], and similar cases, involved either rights which existed independently of the statute, or so-called validating acts (which the statute here considered does not purport to be), and the conclusions there announced under the particular facts are neither pertinent nor controlling in the present case.

 No serious consideration may be accorded the contention that the foregoing stated principles do not apply herein because the 1939 act does not repeal section 3804 of the Political Code. True, the words of the 1939 statute are not expressly words of repeal without a saving clause, but the effect is the same in so far as the application of the principles is concerned when the legislature by apt expression has withdrawn the right and remedy in particular cases, including all pending actions based thereon. The legislature, no doubt having in mind the holding of this court in *Krause* v. *Rarity,* 210 Cal. 644, 654, 655 [293 Pac. 62, 77 A. L. R. 1327], expressly provided that the withdrawal of the right to refund in the particular class of illegal taxes specified should terminate all pending actions. Its expression in this respect is sufficient to accomplish the declared intent and purpose.

 The foregoing likewise answers the contention, made in reliance upon such cases as *Puterbaugh* v. *Gila County,* 45 Ariz. 557 [46 Pac. (2d) 1064], and *Frink* v. *Clark,* (Iowa) 285 N. W. 681, that the statute is invalid because it attempts to prohibit the courts from hearing pending actions and deprives them of jurisdiction. The statute does not so purport to do. In those cases, as well as other cases cited herein, it is recognized that the legislature may take away the right of action itself. The fact that the statute here involved does take away the right of action distinguishes it from the legislation involved in the cases relied upon by the plaintiff.

We conclude that the application of the provisions of chapter 159 of the 1939 statutes to terminate the action here pending violates none of the constitutional rights of guaranties invoked by the plaintiff.

No merit may be accorded the contention that the act is invalid as a violation of section 24 of article IV of the state Constitution providing that every act shall embrace but one subject which shall be expressed in its title. The title contains a general reference to "property taxation, including refund and actions for recovery of taxes theretofore erroneously or illegally levied". The plaintiff states that the title should have more fully indicated the nature of the legislation, that is, that it prohibited or withdrew the right of refund and abated pending actions in certain cases of taxes heretofore erroneously or illegally levied. The plaintiff argues that the wording is deceiving and misleading within the meaning of the language used in *Ex parte Liddell*, 93 Cal. 633, 636 [29 Pac. 251], and *Jackson* v. *City of Santa Monica*, 13 Cal. App. (2d) 376, 390 [57 Pac. (2d) 226]. The general references contained in the title were sufficient. Anything more specific would have led to a prolix or complicated statement of the context of the act itself. The act has but one general object and therefore does not embrace more than one subject. By the general statement of the subject-matter, which is property taxation and specifically refund and actions for recovery of certain illegal taxes indicated, the reader is put on notice that the context of the act affects such refunds and actions therefor, which, under accepted formulae, is sufficient. (*Ex parte Liddell, supra; Abeel* v. *Clark,* 84 Cal. 226, 229 [24 Pac. 383] ; *O. T. Johnson Corp.* v. *City of Los Angeles,* 198 Cal. 308, 323 [245 Pac. 164] ; *Estate of Phillips,* 203 Cal. 106, 115 [263 Pac. 1017] ; *Heron* v. *Riley,* 209 Cal. 507, 510 [289 Pac. 160] ; *Evans* v. *Superior Court,* 215 Cal. 58, 62, 63 [8 Pac. (2d) 467].)

It is also contended that chapter 159 of Statutes of 1939 does not apply herein because *all* of the taxes levied in the tax year involved have not been collected. The plaintiff urges that the words "the taxes collected" appearing in section 3804.1 of the Political Code as adopted by the legislature refer to *all* "the taxes" which have been levied. Inasmuch as the word "collected" must be given the force which the plain language implies, we must conclude that its employment to modify the word "taxes" is sufficient answer to the plaintiff's contention.

The plaintiff also contends that the provisions of section 15 of article XIII of the California Constitution guarantees to it the right to maintain the present action to re-

cover the taxes herein claimed to be illegal. The language of that section is: "No injunction or writ of mandate or other legal or equitable process shall ever issue in any suit, action or proceeding in any court against this State, or any officer thereof, to prevent or enjoin the collection of any tax levied under the provisions of this article; but after payment thereof action may be maintained to recover, with interest, in such manner as may be provided by law, any tax claimed to have been illegally collected." The plaintiff's argument is that the portions of the sentence separated by the semicolon are separable and separate; therefore that "any tax" as used in the latter portion is not limited by and has no reference to the words "any tax" as used in the first part of the sentence, and that the second part of the sentence constitutes a guaranty of the right to maintain an action for the recovery of *any tax*, without limitation, which may be claimed to have been illegally collected. It appears too obvious to merit extended discussion that the quoted section comprises but a single sentence, whose subject-matter is stated in the first portion thereof and that the words "any tax" used in the latter portion refer to that subject-matter. Prior to June, 1933, the words "this section" appeared in the place of the words "this article", used in the sentence as amended in 1933. Article XIII relates to the revenue and taxation system of the state, and in general terms requires taxation of all personal and real property in the state with certain exemptions. However, the plaintiff's further argument based on the change of wording cannot avail it here. The provision withholding the equitable remedy and restricting the taxpayer to an action at law for a refund does not have the effect claimed by the plaintiff. The provision may not be construed to extend the remedy by action at law to cases other than as provided by statute or under the common law.

The foregoing disposes of all of the contentions raised by the plaintiff.

The additional factual showing by the defendants, which brings the present case within the provisions of said section 3804.1, and our conclusion that the 1939 enactment does not contravene any constitutional provision require that the motion to dismiss the appeal and to abate the action be granted. Accordingly, the appeal of the plaintiff herein is dismissed, and to accomplish the abatement of the pending action the

judgment in favor of the plaintiff is reversed with directions to the trial court to dismiss said action.

Waste, C. J., Gibson, J., Knight, J., *pro tem.*, Spence, J., *pro tem.*, and Curtis, J., concurred.

Carter, J., deeming himself disqualified, did not participate.

Rehearing denied. Edmonds, J., and Carter, J., did not participate.